# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2010

Lyle W. Cayce
Clerk

No. 09-50589

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

GEECHIE DEVAIN TEMPLETON,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Geechie Devain Templeton challenges his convictions for using a firearm and committing murder during and in relation to a drug trafficking crime and for possession with the intent to distribute cocaine. We affirm.

## I

This case stems from the murder of Gabriel Rodriguez in Odessa, Texas. Templeton arranged to purchase drugs from Rodriguez, and the two met in an alley adjacent to a house rented by Templeton's sister, Tanisha Lewis (Tanisha), and her then-boyfriend, Terrell Lewis (Lewis). Rodriguez arrived in a red pickup truck, and shortly thereafter, Templeton knocked on the door of his sister's house. Lewis admitted him, and Templeton asked Lewis for $5,000 so that they

could "go half on a brick" of cocaine. Lewis replied that he did not have the money.

Templeton returned to talk to Rodriguez, who was still sitting in his truck. As Tanisha watched, Templeton pulled a gun, and Rodriguez put his hand up to protect himself. Templeton shot Rodriguez twice, fatally wounding him.

After the shooting, Templeton signaled to his sister and Lewis that they needed to leave. Carrying a gun and what his sister identified as "two bricks" of cocaine, Templeton rode with Tanisha and Lewis to Templeton's mother's apartment, where Templeton went inside. Tanisha and Lewis returned to their house and removed a stash of drugs, which they delivered to the house of Lacrisha Franklin, Tanisha's cousin. Tanisha and Lewis then drove to a fire station. Lewis entered and reported to a firefighter that "something bad" had happened to a man in a truck outside of his house. The firemen went to the alley and found Rodriguez dead in the truck.

Meanwhile, when Templeton arrived at his mother's apartment, he asked his girlfriend, Montoya Sprague, who was also there, to wash his clothes. He then left, but called to ask Sprague to take his gun to Franklin's apartment. Sprague wrapped the gun in a T-shirt and complied. She washed Templeton's clothes, but when she could not remove a brown stain, she burned them. At some point after the incident, a friend drove Templeton from his mother's apartment to Hobbs, New Mexico, where he lived. Templeton had only a plain shoe box in his possession.

When Tanisha, Lewis, and a family friend discovered that Templeton's gun was at Franklin's apartment, they became concerned because Franklin was on parole. This concern prompted the friend to remove the gun from Franklin's apartment and return it to Templeton's mother's apartment. About ten days after the murder, an attorney representing Tanisha and Lewis contacted the police and indicated that the pair wanted to meet with them, which was

No. 09-50589

arranged.  They explained to the police what they witnessed the night of the murder. A few days later, officers searched Templeton's mother's apartment and found a loaded Desert Eagle pistol wrapped in a T-shirt.

Approximately a month after the murder, Templeton and Sprague met and traveled together, first to Lubbock, Texas, and ultimately to Topeka, Kansas. Templeton occupied a Topeka motel room under an assumed name, paying cash, for about a month and half before U.S. Marshals and local law enforcement officers raided the motel room and arrested Templeton.  As he was being arrested, Templeton said, "I'm glad this shit is over."

Templeton was indicted and charged in Count One with possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and in Count Two with using a firearm and committing murder during and in relation to the drug-trafficking crime described in Count One, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j). A jury convicted him on both counts, and the district court sentenced him to 120-months' imprisonment on Count One and life imprisonment on Count Two, to be served consecutively.  This appeal followed.

## II

Templeton contends that there was insufficient evidence for the jury to convict him on either count since there was no evidence that the substance he allegedly possessed was a mixture or substance containing cocaine. We consider "whether a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict."[1]

---

[1] *United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009) (internal quotation marks and citation omitted).

3

Because law enforcement officers never recovered the substance Templeton possessed on the night of the murder, the Government relied on the testimony of Tanisha and Lewis to establish that it was cocaine. Both witnesses were experienced in drug trafficking, and Tanisha had previously been convicted for possession of crack cocaine. Tanisha testified that Templeton was carrying "two bricks or two kilos of cocaine" when he got into the car with her after the murder. She stated that the bricks were wrapped in cellophane, explaining that she had previously seen bricks packaged similarly to those Templeton carried. She further testified that the bricks were powder cocaine, noting that she had never seen a brick of crack cocaine. Lewis, moreover, testified that Templeton asked him for $5,000 to "go half on a brick" before the murder. He explained that "brick" was a reference to one kilo of cocaine. Lewis also stated that when Templeton got into the car after the murder, he was carrying two bricks of "dope" wrapped in brown packaging and tape. Lewis testified that he knew the packages contained cocaine since he had seen similarly wrapped bricks in the course of his own drug deals.

In addition to this testimony, the jury heard evidence concerning Templeton's behavior after the shooting that suggests he sold something for large sums of cash. After the murder, Templeton went to Hobbs, New Mexico, carrying only a shoe box. He later carried this shoe box with him when his friend transported him to another house in Hobbs, where he visited with the occupant for ten to fifteen minutes. Templeton purchased a new television in Hobbs, paying over one thousand dollars in cash, and he similarly paid cash for his motel room in Topeka. When he was apprehended by law enforcement in that motel room, he possessed a digital hand scale with white residue on it. Though there was insufficient residue for chemical testing, the law enforcement officer who found this item of evidence testified that such scales are typically used to weigh illegal drugs when packaging them for sale. From this evidence,

4

the jury could infer that, after the murder, Templeton generated large sums of cash through cocaine sales.

Given the eyewitnesses' testimony that Templeton was carrying two kilograms of cocaine, the circumstances surrounding the murder of Rodriguez, and Templeton's behavior after the incident, the jury could reasonably conclude that Templeton possessed 500 grams or more of a mixture or substance containing cocaine on the night in question.[2]

Templeton argues that we should look to the Tenth Circuit's decision in *United States v. Baggett*[3] in considering whether the evidence sufficiently showed he possessed cocaine. In *Baggett*, the Tenth Circuit determined that evidence of three telephone calls arranging for the purchase of heroin and the defendant's confession that she had used some heroin each day of the month was insufficient to show that the defendant possessed heroin on the day in question.[4] The court explained, however, that in some cases circumstantial evidence could be sufficient to show that a defendant possessed illegal drugs. Such evidence

> may include "evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence."[5]

---

[2] *Cf. United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993) (similarly concluding that witness testimony and other circumstantial evidence was sufficient to allow a reasonable jury to conclude that the defendant had trafficked in cocaine).

[3] 890 F.2d 1095 (10th Cir. 1989).

[4] *Id.* at 1096-97.

[5] *Id.* at 1096 (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)).

No. 09-50589

In *Baggett*, the Government presented no such evidence, leading the court to conclude that the evidence was insufficient to support the conviction. But in this case, there is much more evidence, direct and circumstantial. There was testimony regarding the "physical appearance" of the packages, testimony that Templeton intended to pay "a high price" for the substance, testimony that Templeton had an abundance of cash in the days and weeks after he had taken the two packages, and testimony that the packages contained cocaine. Thus unlike *Baggett*, the evidence here was more than sufficient to establish that the packages contained cocaine.

Templeton's other sufficiency arguments do not require reversal of his conviction. He argues that Lewis's testimony that Templeton asked him for $5,000 to pay for half a brick of cocaine cannot be reconciled with Agent Dean Cook's testimony that a kilogram of cocaine sells for $18,000 to $20,000, and that Lewis's testimony is therefore not credible. But we "accept the jury's credibility determinations unless a witness's testimony is incredible or patently unbelievable."[6] Templeton also contends that the Government presented no evidence that he possessed either a large amount of cocaine or money at the time of his arrest, three months after the murder. While true, the jury could have determined that the three-month lapse gave Templeton sufficient time to sell the cocaine and either spend or hide the money.

Accordingly, we conclude that the evidence was sufficient to support both convictions.

### III

Templeton argues that the district court abused its discretion when it admitted evidence of his prior cocaine trafficking and his 2004 arrest for cocaine possession. We review the admission of evidence under Federal Rule of Evidence

---

[6] *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) (internal brackets, quotation marks and citation omitted).

404(b) under a "heightened" abuse of discretion standard.[7] "Evidence in criminal trials must be strictly relevant to the particular offense charged."[8] However, we do not reverse for erroneous admissions under Rule 404(b) if the error was harmless.[9]

Before trial, the Government filed notice that it would offer evidence under Rule 404(b). The Government asked the district court to admit testimony from two witnesses who were prepared to testify that Templeton frequently sold them large amounts of crack cocaine. The Government also asked the court to admit evidence of Templeton's 2004 arrest for possessing nine ounces of cocaine. The district court determined that Templeton's not guilty plea put his state of mind at issue; the court therefore allowed the evidence of his prior crack cocaine trafficking to prove intent, knowledge, and motive. The court similarly allowed the evidence of Templeton's arrest to show intent, knowledge, and motive. The court determined in each instance that the probative value of the evidence outweighed any prejudice to Templeton.

On the second day of trial, Templeton renewed his objections. His counsel explained that the defense's theory of the case was that "Geechie Templeton was not there, didn't commit the murder, didn't retrieve any cocaine from Gabriel Rodriguez." Accordingly, defense counsel offered to stipulate to Templeton's intent to distribute cocaine, but only if the Government proved both presence at the crime scene and possession of cocaine. Due to Templeton's refusal to stipulate to presence and possession, the district court declined to exclude the evidence.

---

[7] *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2018 (2009).

[8] *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) (internal brackets, quotation marks, and citation omitted).

[9] *Id.*

No. 09-50589

Under Rule 404(b), evidence of other crimes or bad acts is inadmissible "to prove the character of a person in order to show action in conformity therewith."[10] But such evidence may be admissible to prove motive, intent, or knowledge, among other things.[11] We analyze Rule 404(b) admissions under the two-prong test outlined in *United States v. Beechum*.[12] First, we must consider whether, applying Rule 401, "the extrinsic offense evidence is relevant to an issue other than the defendant's character."[13] Second, we must determine whether the probative value of the evidence is substantially outweighed by its undue prejudice.[14] This prong involves a "commonsense assessment of all the circumstances surrounding the extrinsic offense."[15] We consider the "incremental probity" of the evidence "with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference."[16]

Pointing to *United States v. Yeagin*,[17] Templeton argues that the district court abused its discretion when it admitted the extrinsic evidence even after he offered to stipulate to his intent to distribute if the Government proved possession. In *Yeagin*, we overturned a defendant's convictions for possession of methamphetamine with intent to distribute, use of a firearm in connection

_____

[10] FED. R. EVID. 404(b).

[11] *Id.*

[12] *See United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)).

[13] *Beechum*, 582 F.2d at 911.

[14] *Cockrell*, 587 F.3d at 678.

[15] *Id.* (quoting *Beechum*, 582 F.2d at 914).

[16] *Beechum*, 582 F.2d at 914.

[17] 927 F.2d 798 (5th Cir. 1991).

with a drug trafficking offense, and possession of a firearm as a convicted felon because the district court admitted evidence of the defendant's nine prior felony convictions despite the defendant's offer to stipulate to the intent-to-distribute element of the drug charge and the convicted-felon element of one of the firearm charges.[18]    As in this case, the defendant offered to stipulate to intent to distribute *if* the Government proved possession.[19]  In ruling that the district court abused its discretion, we acknowledged the "general rule" that "a party may not preclude his adversary's proof by an admission or offer to stipulate,"[20] but explained that the "nine prior felonies were unrelated to the factual circumstances of the charged offense" and would have an "extremely prejudicial effect" on the defendant.[21]

The circumstances here are distinguishable from those in *Yeagin*.  The evidence in *Yeagin* was proffered to show intent only.  Here, the court admitted the evidence to show intent, knowledge, and motive for the murder of Rodriguez. Even if the proposed stipulation weakened the evidence's probative value as to Templeton's intent, the evidence still had significant probative value as to Templeton's motive.  The evidence showed that Templeton had previously trafficked crack cocaine, and the jury could infer that access to more cocaine motivated Templeton to murder Rodriguez.  Moreover, the evidence was not as prejudicial as that in *Yeagin*, where the district court admitted the defendant's convictions for five drug crimes and four unrelated crimes with little relevance to the drug charge against the defendant.  In contrast, no evidence was presented to the jury that Templeton was convicted of a drug crime. The witness

---

[18] *Id.* at 801-03.

[19] *Id.* at 801.

[20] *Id.* at 802 (quoting *United States v. Spletzer*, 535 F.2d 950, 955 (5th Cir. 1976)).

[21] *Id.* at 802-03.

testimony was less prejudicial than evidence of prior convictions, since the jury was free to disregard the testimony of the witnesses, who were both imprisoned on drug charges and testified that they hoped for sentence reductions in exchange for their cooperation. The judge was within his discretion to determine that the probative value of this evidence with regard to intent, knowledge, and motive substantially outweighed its prejudicial effect.

## IV

Templeton next contends that the district court committed reversible error by preventing defense counsel from cross-examining Tanisha to establish that she was assaulted by Lewis. The defense intended to rely "on a theory that [Lewis] pressured his wife into marrying him to ensure the husband-wife privilege applied, and then used fear to make sure she testified against her brother and not against him." The Government argues that the court properly limited the cross-examination in this regard since defense counsel provided no evidence that Lewis inflicted violence on his wife to influence her testimony or that Tanisha altered her testimony out of fear.

We review alleged Sixth Amendment Confrontation Clause violations de novo, but any violations are subject to a harmless error analysis.[22] If there is no Confrontation Clause violation, we review the district court's limitation of cross-examination for abuse of discretion.[23]

The Confrontation Clause "provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"[24]  "The main and essential purpose of confrontation is to secure for the

---

[22] *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006).

[23] *Id.* at 558-59.

[24] *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quoting U.S. CONST. amend. VI).

opponent the opportunity of cross-examination."[25]  The Supreme Court has explained that "the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."[26]  The potential bias of a witness "is always relevant as discrediting the witness and affecting the weight of his testimony."[27]  This court has further emphasized that "[t]he right to cross-examination 'is particularly important when the witness is critical to the prosecution's case.'"[28]  But the Confrontation Clause does not prohibit the trial judge from putting some limits on an inquiry into potential bias.[29]  Rather, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant."[30]

We have explained that "the Confrontation Clause is generally satisfied when the defendant has been 'permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'"[31]  "The relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of

---

[25] *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted).

[26] *Id.* at 316-17.

[27] *Davis*, 415 U.S. at 316 (internal quotation marks and citation omitted).

[28] *Jimenez*, 464 F.3d at 559 (quoting *United States v. Mizell*, 88 F.3d 288, 293 (5th Cir. 1996)).

[29] *Van Arsdall*, 475 U.S. at 679.

[30] *Id.*

[31] *United States v. Skelton*, 514 F.3d 433, 439 (5th Cir. 2008) (quoting *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993)).

the witness."[32]    To establish a Confrontation Clause violation, the defendant need not show that the jury would have rendered a different verdict.[33]   Instead, the defendant need only show that "a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination."[34]

To determine whether Templeton's confrontation right was violated, we must examine Tanisha Lewis's trial testimony and the line of cross-examination the district court prohibited.    As an eyewitness to both the murder and Templeton's cocaine possession, Tanisha was a particularly important witness for the Government.  She testified that a man in a red pickup truck arrived in the alley outside her house and that Templeton knocked on her door shortly thereafter.  She stated that Templeton briefly spoke with Lewis and then left through the front door.  She explained that, through an open door, she saw Templeton approach the red truck and shoot the man sitting inside.  She further testified that after the shooting, Templeton told her and Lewis to get into her car, where Templeton joined them carrying the gun and two kilograms of cocaine.

On cross-examination, defense counsel was able to elicit some information showing Tanisha's potential bias.  He asked her questions about waiting to talk to the police until eleven days after the murder, and she testified that she was with Lewis in the days before she talked to the police.  Defense counsel also questioned her as to whether her decision to marry Lewis one month after the murder was an effort to obtain the spousal privilege, so that any subsequent

---

[32] *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).

[33] *Skelton*, 514 F.3d at 439.

[34] *Id.* (citing *Van Arsdall*, 475 U.S. at 680) (internal brackets and quotation marks omitted).

No. 09-50589

conversations concerning the murder could not be introduced in court. But defense counsel did not otherwise question Tanisha in front of the jury regarding Lewis's influence on her testimony.

Before trial, defense counsel informed the court that Templeton's mother had told him that Lewis had "savagely beat up" Tanisha. In order to determine whether further cross-examination on this line was appropriate, the court allowed defense counsel to question Tanisha about Lewis's alleged abuse outside the presence of the jury. Tanisha explained that Lewis gave her a black eye in 2008 during a fight about infidelity. When defense counsel asked how many times Lewis had bruised her since the night of the murder, she replied that the black eye was the only violent incident. She testified that Lewis had never instructed her on how to testify, that they had never fought about the case, and that she was not afraid of Lewis. Defense counsel stated that Templeton's mother would also testify about the incident, but counsel could not locate her when she was supposed to testify. The court prohibited cross-examination on the subject based on Tanisha's proffered testimony, but left open the possibility of recalling her if defense counsel provided information that the abuse was related to Tanisha's testimony or the murder. Defense counsel proffered no other testimony regarding the alleged abuse.

Evidence that Tanisha was the victim of prolonged spousal abuse or that Lewis beat her in relation to her testimony could be probative of whether her testimony was influenced by fear of further abuse. If there was such evidence, the jury could "appropriately draw inferences relating to" the reliability of Tanisha's damning evidence.[35] But here, the proffered testimony showed only that Lewis gave Tanisha a black eye once, in an altercation regarding infidelity. This testimony has only marginal, if any, relevance to Tanisha's credibility. The

---

[35] *Skelton*, 514 F.3d at 439.

No. 09-50589

trial judge gave the defense ample opportunity to present more evidence to show the relevance of the abusive incident, but the defense failed to do so. Accordingly, the trial judge's limitation on this line of questioning in cross-examination was well within his "wide latitude" to impose such limits.[36]

## V

Finally, Templeton argues that the district court abused its discretion by instructing the jury that evidence of flight could reflect a consciousness of guilt. He asserts that the evidence shows that he went to Topeka, Kansas, on vacation at the behest of his girlfriend and that no evidence shows that he was aware that he was a criminal suspect.

We review jury instructions for abuse of discretion[37] and consider "whether the court's charge, as a whole, correctly states the law and clearly instructs jurors as to the principles of law applicable to the factual issues confronting them."[38] In determining whether the jury instructions are factually supportable by the evidence, "we evaluate that evidence in the light most favorable to the government."[39]

Evidence of a defendant's flight is generally admissible as tending to show guilt.[40] We have explained that a flight instruction is proper when the evidence supports four inferences: "1) the defendant's conduct constituted flight; 2) the defendant's flight was the result of consciousness of guilt; 3) the defendant's

---

[36] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[37] *United States v. Clark*, 582 F.3d 607, 615 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1306 (2010).

[38] *United States v. Martinez*, 190 F.3d 673, 678 (5th Cir. 1999).

[39] *Clark*, 582 F.3d at 615.

[40] *Martinez*, 190 F.3d at 678.

14

guilt related to the crime with which he was charged; and, 4) the defendant felt guilty about the crime charged because he, in fact, committed the crime."[41]

The evidence here supports each of the four inferences. The record reflects that Templeton traveled to Topeka before Christmas, about a month after the murder, and stayed in an extended stay hotel room under an assumed name, paying cash for the room. We have previously found that similar evidence supports an inference of flight,[42] and the fact that Templeton did not flee until approximately one month after the crime does not undermine this inference.[43] Templeton's statement to law enforcement upon his arrest that "I'm glad this shit is over" further supports the inference that he in fact fled and demonstrates his awareness that he was wanted for Rodriguez's murder, drug trafficking, or both, as the record reveals no other crime from which Templeton could have been fleeing.[44] His statement similarly supports an inference that he felt guilty about the crime charged because he had in fact committed the crime.

That the jury could also have found an innocent motive in Templeton's actions does not render the flight instruction erroneous.[45] Because the evidence supported the four required inferences, the district court did not abuse its

---

[41] *Id.*

[42] *See United States v. Murphy*, 996 F.2d 94, 97 (5th Cir. 1993) (concluding that evidence the defendant rented a house under his friend's name supports a flight inference); *United States v. Mesa*, 660 F.2d 1070, 1078 (5th Cir. Unit B Nov. 1981) (concluding that evidence the defendant rented a hotel room under an assumed name supports a flight or concealment inference).

[43] *See Murphy*, 996 F.2d at 97 (concluding that the defendant's conduct constituted flight even though one month had passed since the crime).

[44] *See id.* (explaining that the evidence supported the defendant's consciousness of guilt in relation to the crime charged since the record did not show any other crime from which the defendant could have been fleeing).

[45] *See Mesa*, 660 F.2d at 1078 ("The fact that the record might sustain either inference does not make the concealment instruction erroneous.").

No. 09-50589

discretion in instructing the jury concerning flight.  Further, given the strong evidence of Templeton's guilt, as discussed in Part II, any error in this regard would be harmless.

\*        \*        \*

For the foregoing reasons, we AFFIRM Templeton's convictions.