# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10531

United States Court of Appeals
Fifth Circuit

**FILED**
March 20, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSUE MARTINEZ-GARCIA,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CR-168-1

Before JONES, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Josue Martinez-Garcia was convicted of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and sentenced to life imprisonment. He appeals his conviction on the grounds that the district court violated his Sixth Amendment rights to confront witnesses and to present a complete defense, the district court erred in admitting evidence obtained as the fruit of an unreasonable search, and the evidence was

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10531

insufficient to convict. He appeals his sentence on the ground that it is substantively unreasonable. We conclude that each of Martinez-Garcia's arguments lacks merit, and we affirm his conviction and sentence.

## I

Martinez-Garcia became the target of an investigation by a Drug Enforcement Administration (DEA) task force after surveillance of a known methamphetamine dealer named Jacob Fenton led police to a residence owned by Martinez-Garcia, whom officers believed to be Fenton's source. Fenton was later arrested and began providing information to the police about Martinez-Garcia. Around the same time, an undercover officer attempted to use a confidential informant to purchase drugs from an unidentified individual later determined to be Martinez-Garcia, but the transaction was not completed because Martinez-Garcia suspected police involvement. A later meeting between the confidential informant and Martinez-Garcia observed by Officer George Courtney of the DEA task force led to the realization that the person identified as Fenton's source was the same person as the target of the failed undercover operation, and a decision was made to have Martinez-Garcia "truly identified" by means of a traffic stop in order to determine his real name and birth date.

The stop was initiated by Officer Adam Byars, who was told where he could likely find Martinez-Garcia and was asked to stop his vehicle. After spotting Martinez-Garcia in his vehicle, Officer Byars followed him onto the highway and, after briefly pacing the car, executed a traffic stop for driving seventy miles per hour in a sixty mile per hour zone. Martinez-Garcia provided a Mexican driver's license containing no birth date and listing his name as Miguel Martinez. Officer Byars arrested Martinez-Garcia for not having an operator's license and obtained fingerprints in order to verify his identity. Martinez-Garcia admitted that he was actually Josue Martinez. An officer on

2

No. 13-10531

the DEA task force photographed Martinez-Garcia to verify his identity. Martinez-Garcia was subsequently indicted for conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846.

Prior to trial, Martinez-Garcia moved to suppress the evidence of his identity resulting from the traffic stop initiated by Officer Byars. The district court denied the motion. A jury trial commenced, which ended in a mistrial after the jury was unable to reach a unanimous verdict. Martinez-Garcia was re-indicted and a second jury trial commenced. The prosecution presented testimony of three alleged co-conspirators—Fenton, Alton Gary, and Leslie Alonzo—and Officer Courtney. Fenton explained that he had been arrested and charged with conspiracy to distribute methamphetamine and had pleaded guilty. He identified Martinez-Garcia as his supplier and described various details of the conspiracy, including: the consignment arrangement he had with Martinez-Garcia; the means of communication between the two; the amounts of methamphetamine supplied by Martinez-Garcia; and the locations where Martinez-Garcia stored drugs and money and where Fenton purchased drugs from Martinez-Garcia. Gary testified that he had purchased methamphetamine from Fenton and observed Fenton obtain methamphetamine from an apartment complex associated with Martinez-Garcia. Alonzo testified that she had sold methamphetamine for Martinez-Garcia and another man, and she provided details regarding where drugs were kept and where she received them from Martinez-Garcia, how the arrangement worked, and other information about Martinez-Garcia's real property and vehicles that was corroborative of the testimony of other witnesses. She also confirmed Fenton's association with Martinez-Garcia. Officer Courtney described various surveillance operations that led law enforcement agents to property and vehicles associated with Martinez-Garcia

3

and that gave rise to the attempted drug transaction with Martinez-Garcia.

During the cross-examination of Fenton, counsel for Martinez-Garcia sought to inquire about Fenton's criminal history, beginning with the first time he was arrested. After ascertaining that defense counsel wished to go over Fenton's entire criminal history, the district court instructed Fenton to simply state "every time [he could] recall getting arrested." Fenton then testified to arrests for theft, unauthorized use of a motor vehicle, possession of marijuana and methamphetamine, and felon in possession of a weapon. After Fenton had related his criminal history, the court prohibited defense counsel from asking additional questions on the subject. Defense counsel then asked Fenton about the nature and circumstances of the arrest that led to the charge of conspiracy to distribute methamphetamine. Fenton explained that he had been arrested following a police chase in which he drove the wrong way down a one-way street in an attempt to evade capture because he was high and on the run from a probation violation, and he did not want to go back to jail. Defense counsel asked Fenton about the duration of the chase and Fenton responded that he was "aware that it took 21 minutes," based on a police report he had read. When defense counsel attempted to continue questioning Fenton on the chase, he was instructed by the district court to move on to another subject unless he could provide the court with a justification for continuing that line of questioning.

Martinez-Garcia sought to call Officer Waqas Ameen, who had been involved in the police chase preceding Fenton's arrest, to testify to the severity of the chase. The district court excluded the proffered testimony on the ground that "[t]he waste of time more than offsets the beneficial value the jury could get out of it."

Martinez-Garcia was convicted. He moved for a judgment of acquittal and new trial under Federal Rule of Criminal Procedure 29, which was denied.

No. 13-10531

At Martinez-Garcia's sentencing hearing, the district court adopted the factual findings of the Presentence Investigation Report (PSR), which calculated an offense level of 43 and criminal history category of III, with a recommended sentence of life imprisonment under the United States Sentencing Guidelines. Concluding that there was no reason to depart from the Guidelines and that life imprisonment was an appropriate sentence for Martinez-Garcia, the district court sentenced Martinez-Garcia to life imprisonment. Martinez-Garcia now appeals his conviction and sentence.

## II

Martinez-Garcia first argues that the district court violated his Sixth Amendment Confrontation Clause rights when the court prevented defense counsel from asking follow-up questions about Fenton's criminal history and inquiring further into the severity of the police chase. This court reviews de novo a defendant's claim that his Sixth Amendment right to confront witnesses against him has been violated.[1] A Confrontation Clause violation exists if "a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning."[2] If a violation is found, it is subject to harmless error analysis.[3] Otherwise, "[i]f there is no Confrontation Clause violation, we review the district court's limitation of cross-examination for abuse of discretion."[4]

Martinez-Garcia asserts that, had the cross-examination regarding Fenton's criminal history not been limited, the jury could have concluded, based on Fenton's extensive criminal history, that he had a propensity for

---

[1] *United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010).

[2] *United States v. Roussel*, 705 F.3d 184, 194 (5th Cir. 2013).

[3] *Templeton*, 624 F.3d at 223.

[4] *Id.*

untruthfulness and that he might have fabricated his testimony in order to shift blame from himself to Martinez-Garcia.  However, Fenton had already testified to the nature and frequency of his arrests and convictions.  Indeed, Martinez-Garcia offers no suggestion as to any information defense counsel could have uncovered that would have been different in substance from the testimony Fenton had already provided on the subject.  Instead, Martinez-Garcia essentially argues that his attorney should have been permitted to cross-examine Fenton about his criminal history in more detail.  But more details would not have caused the jury to have a "significantly different impression" of Fenton's credibility.  We have previously held that a limitation on such cumulative questioning does not violate a defendant's Confrontation Clause rights,[5] and we conclude that it did not do so in this case.  Nor did the district court abuse the discretion permitted it in imposing "reasonable limits on . . . cross-examination based on concerns about . . . interrogation that is repetitive or only marginally relevant."[6]

As to the district court's limitation on questioning about the police chase, Martinez-Garcia argues that Fenton minimized the severity of the chase and that, had defense counsel been permitted to engage in further cross-examination, the inconsistency would have become clear.  He contends that this might have significantly influenced the jury's view of Fenton's credibility because it could have concluded that since Fenton downplayed the severity of

---

[5] *See, e.g.*, *United States v. Reeves*, 892 F.2d 1223, 1225 (5th Cir. 1990) (holding that defendant's Confrontation Clause rights were not violated when judge limited cross-examination "when the questions became cumulative"); *see also United States v. McCullough*, 631 F.3d 783, 791 (5th Cir. 2011) (holding that defendant's Confrontation Clause rights were not violated when defense counsel was permitted to elicit "basic information about [the witness's] convictions").

[6] *United States v. Alaniz*, 726 F.3d 586, 611 (5th Cir. 2013).

No. 13-10531

the police chase, he had also downplayed his role in the conspiracy in an attempt to shift the blame onto Martinez-Garcia. This claim also fails.

First, to the extent that Fenton minimized the severity of the police chase, its impact was not substantial. Fenton admitted that he was involved in a lengthy police chase involving the commission of multiple dangerous felonies in order to avoid returning to jail for previous violations, and that he had pleaded guilty to conspiracy to distribute methamphetamine. This is already a basis from which Martinez-Garcia could argue that Fenton had motive to fabricate his testimony, and the fact that the actual police chase may have been more serious would not have substantially impacted the jury's view of Fenton's credibility. Second, and more importantly, the testimony Fenton provided was not inconsistent with Martinez-Garcia's characterization of the police chase. Thus, there would be no contradiction in Fenton's testimony that might alter the jury's view of his credibility. Therefore, even if Martinez-Garcia's attorney had been permitted to continue questioning Fenton and elicit testimony to Martinez-Garcia's satisfaction, Martinez-Garcia has failed to show that this might have caused the jury to have a substantially different view of Fenton's credibility.

For the same reasons, Martinez-Garcia cannot show that the district court abused its discretion in prohibiting defense counsel from continuing to question Fenton about the police chase. Because Martinez-Garcia cannot show that further questioning would have resulted in inconsistent testimony that would have impeached Fenton's credibility, the probative value of that testimony is substantially outweighed by needlessly presenting cumulative evidence.[7] Thus, the district court did not abuse its discretion in not permitting defense counsel to continue his questioning on the topic.

---

[7] *See* FED. R. EVID. 403.

7

No. 13-10531

## III

Martinez-Garcia next raises a separate Sixth Amendment claim: the district court violated his right to present a complete defense by excluding the testimony of Officer Ameen.  We review de novo claimed violations of a defendant's right to present a complete defense.[8]  That right "may be violated by 'evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.'"[9]  If a violation is found, it is subject to harmless error analysis.[10]  In the absence of a violation, evidentiary rulings are reviewed for abuse of discretion.[11]

Martinez-Garcia asserts that the district court's exclusion of Officer Ameen's testimony prevented defense counsel from eliciting for the jury details of the severity of the police chase, and that had counsel been able to do so, the jury could have concluded that Fenton's testimony regarding the conspiracy was fabricated in order to obtain favorable treatment from prosecutors in his own case.  This mirrors an argument that we previously rejected in *United States v. Ramos*.[12]  In *Ramos*, the defendants were two Border Patrol agents charged with various offenses related to the shooting of a drug-trafficking suspect.[13]  The suspect testified on behalf of the prosecution that he was unarmed and fleeing when he was shot.[14]  After being convicted, the defendants argued on appeal that the district court had violated their right to

---

[8] *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008).

[9] *United States v. Njoku*, 737 F.3d 55, 75 (5th Cir. 2013) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

[10] *Skelton*, 514 F.3d at 438.

[11] *Njoku*, 737 F.3d at 75.

[12] 537 F.3d 439 (5th Cir. 2008).

[13] *Ramos*, 537 F.3d at 442.

[14] *Id*. at 445.

present a complete defense by excluding testimonial and photographic evidence regarding the amount and value of marijuana in the vehicle driven by the suspect, which they contended was relevant to the issue of whether the suspect had a gun, thereby justifying the defendants' use of their weapons.[15]

In rejecting the defendants' argument, we noted that the suspect had already admitted that he knew he was transporting drugs and committing a serious offense, and concluded that "the specific weight and value of the marijuana load would have added little more to the case of the defense and reasonably could be seen as cumulative."[16]  Further, the court reasoned that the defendants had still made arguments to the jury based on the large amount of marijuana and the suspect's possible motives; thus, the exclusion of the additional evidence was "neither a Sixth Amendment violation [of the defendants' right to present a complete defense] nor an abuse of discretion relating to an evidentiary matter."[17]

Similarly, here Fenton had already admitted that he was involved in a police chase lasting twenty-one minutes, and that he had pleaded guilty to conspiracy to distribute methamphetamine.  Thus, the admission of additional testimony regarding the specifics of the police chase in which Fenton was involved "would have added little more to the case of the defense and reasonably could be seen as cumulative."[18]  Additionally, defense counsel was able to, and did, use Fenton's admissions to argue to the jury in closing that Fenton had motive to fabricate testimony.  Thus, as in *Ramos*, the exclusion of Officer Ameen's testimony was neither a Sixth Amendment violation nor an

---

[15] *Id.* at 447-49.

[16] *Id.* at 449.

[17] *Id.*

[18] *Cf. id.*

abuse of discretion.

**IV**

Martinez-Garcia challenges the district court's denial of his motion to suppress the evidence of his identity obtained as the result of the traffic stop performed by Officer Byars. He argues that the traffic stop of his vehicle by Officer Byars was illegal because it was a pretext performed "only to obtain evidence from [Martinez-Garcia, and] not to enforce any traffic law," and contends that the evidence of his identity obtained as a result of the stop should have been suppressed as the fruit of an unreasonable search. This argument is foreclosed by our precedent.

In *United States v. Harris*,[19] we held that a traffic stop is justified at its inception if a traffic violation has occurred, regardless of whether the subjective reason for the stop is one other than the occurrence of the traffic infraction.[20] The defendant in *Harris* made a nearly identical "illegal pretext" argument that "officers had improperly intended to search his truck prior to the stop."[21] This court specifically rejected that argument, holding that "[t]he stop of Harris's truck, *even if pretextual*, was justified by Harris's numerous traffic violations."[22] Similarly, the stop of Martinez-Garcia's vehicle, even if pretextual, was justified by the fact that he was observed by Officer Byars speeding ten miles per hour over the posted speed limit. Thus, the district

---

[19] 566 F.3d 422 (5th Cir. 2009).

[20] *Harris*, 566 F.3d at 434 ("It is well established that '[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment.'") (quoting *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir.1997)).

[21] *Id.*

[22] *Id.* at 435 (emphasis added).

No. 13-10531

court did not err in denying Martinez-Garcia's motion to suppress the evidence obtained from the traffic stop.

V

Martinez-Garcia contends that the evidence was insufficient to convict him. We review claims of insufficient evidence de novo when the defendant has properly moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.[23] "All evidence is reviewed in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established . . . guilt beyond a reasonable doubt."[24] "All credibility determinations and reasonable inferences are to be resolved in favor of the verdict."[25]

Martinez-Garcia argues that the evidence used to convict him consisted solely of unverified testimony of cooperating witnesses and testimony from DEA agents about unsuccessful drug busts for which there was no physical evidence to tie Martinez-Garcia to any drug transaction. He asserts that "[b]ecause the government presented the testimony of interested witnesses without support from physical evidence, the evidence is not sufficient to convict" him of conspiracy to distribute methamphetamine. This argument fails.

In *United States v. Thompson*,[26] we reiterated that "[a]s long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient

---

[23] *United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012).

[24] *Id.*

[25] *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995).

[26] 735 F.3d 291 (5th Cir. 2013), *petition for cert. filed*, --- U.S.L.W. ---- (U.S. Feb. 19, 2014) (No. 13-8781).

11

evidence to convict."[27]  Like Martinez-Garcia, the defendant in *Thompson* was charged with conspiracy to distribute a controlled substance in violation of § 846.[28]  The prosecution presented testimony of three co-conspirators connecting Thompson to the conspiracy through his presence at drug transactions and the use of his house as a meeting point.[29]  Rejecting Thompson's argument that this evidence was insufficient to convict him on the conspiracy charge, this court explained that Thompson had failed to "point to any ways in which [the prosecution's witnesses'] testimony was 'factually insubstantial or incredible,'" and concluded therefore that "[t]his evidence is sufficient: A rational trier of fact could find Thompson was a voluntary participant in a drug conspiracy."[30]

Similarly, here Martinez-Garcia presents no argument that the testimony of Fenton, Gary, or Alonzo was "factually insubstantial or incredible."  Indeed, he concedes that "Fenton further testified that Appellant was involved as his supplier [of methamphetamine]" and that "Alonzo testified . . . that she sold drugs for Johnathan Ruiz and Appellant."  To the extent that Martinez-Garcia's contention is that the testimony of Fenton, Gary, and Alonzo was inherently unreliable because they received benefits in exchange for their testimony, this argument is foreclosed because "[i]t is well-settled that credibility determinations are the sole province of the jury."[31]

Martinez-Garcia's quarrel with the lack of physical evidence is similarly not a basis for a determination of insufficiency of the evidence, as "[t]he

---

[27] *Thompson*, 735 F.3d at 302 (alteration in original) (quoting *United States v. Medina*, 161 F.3d 867, 872-73 (5th Cir. 1998)).

[28] *Id.* at 294.

[29] *Id.* at 301-02.

[30] *Id.* at 302.

[31] *United States v. Davis*, 61 F.3d 291, 297 (5th Cir. 1995).

elements of [conspiracy under § 846] may be established by circumstantial evidence . . . ."[32]  Because the Government presented substantial and credible testimony of co-conspirators, corroborated by circumstantial evidence to show that Martinez-Garcia had conspired to distribute methamphetamine in violation of § 846, there was sufficient evidence from which a reasonable juror could conclude that Martinez-Garcia was guilty beyond a reasonable doubt.

## VI

Martinez-Garcia challenges his sentence of life imprisonment on the ground that it was substantively unreasonable.  We review the substantive reasonableness of a sentence for abuse of discretion.[33]  Because Martinez-Garcia's sentence was within the Guidelines range, it is presumptively reasonable.[34]  That presumption may be rebutted "only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[35]

Martinez-Garcia argues that his sentence of life imprisonment is substantively unreasonable because he did not physically or financially harm any individual or obstruct justice in the commission of the offense, did not harm anyone in the commission of his past offense of burglary, and is a "father, husband, and hardworking member of society."  He asserts that in light of these facts, which the district court was obligated to consider under 18 U.S.C. § 3553(a) in imposing a sentence that is "sufficient, but not greater than necessary," a sentence of life imprisonment is "greater than necessary" and

---

[32] *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000).

[33] *United States v. Alvarado*, 691 F.3d 592, 596 (5th Cir. 2012).

[34] *Id.*

[35] *United States v. Brown*, 727 F.3d 329, 342 (5th Cir. 2013).

therefore unreasonable given the lesser sentences available within the Guidelines range.

We rejected almost identical arguments in *United States v. Brown*.[36]  In that case, the defendants did "not point to any sentencing factor improperly omitted from consideration or given inappropriate weight; they assert[ed], without elaboration, that their sentences were 'clearly unreasonable' considering their 'entire li[ves], background, lack of criminal history, education, [and] all of the information contained in the PSR.'"[37]  We concluded that because the district court had taken their personal circumstances into consideration through the § 3553(a) factors in determining their sentence, the defendants had "give[n] us no reason to disturb the district court's considered judgment," and held that the defendant could not overcome the presumption of reasonableness.[38]

Like the defendants in *Brown*, Martinez-Garcia points to nothing in the court's reasoning that suggests it gave weight to an impermissible factor or improperly failed to consider a factor.  The district court specified that it had not "received any information to cause [it] to conclude that the advisory guideline range [was] an inappropriate sentence in [the] case" and that a sentence of life imprisonment was "an appropriate sentence and a reasonable sentence that adequately and appropriately addresses all of the [§ 3553(a)] factors."  Martinez-Garcia's argument is little more than a request that this court reweigh the § 3553(a) factors, which is insufficient to rebut the

---

[36] 727 F.3d 329 (5th Cir. 2013).

[37] *Brown*, 727 F.3d at 342 (second and third alterations in original).

[38] *Id.*

No. 13-10531

presumption of reasonableness.[39]  Accordingly, the district court did not abuse its discretion.

*    *    *

For the foregoing reasons, Martinez-Garcia's conviction and sentence are AFFIRMED.

---

[39] *See Gall v. United States*, 552 U.S. 38, 51 (2007) ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."); *United States v. Padilla-Cortez*, 499 F. App'x 391, 392 (5th Cir. 2012) (unpublished) ("[Defendant's] arguments . . . are essentially a request that this court reweigh the § 3553(a) factors, which we will not do.").