# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 20, 2023

Lyle W. Cayce
Clerk

No. 22-50078

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Damion Edward Cruz-Benavente,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-157-1

_____

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Damion Edward Cruz-Benavente ("Cruz") was sentenced to life imprisonment for sexually abusing a minor ("D.A."). Cruz appeals his convictions under Counts One and Two, "aggravated sexual abuse *by force*" and "sexual abuse *by threat*." 18 U.S.C. §§ 2241(a), 2242(1) (emphasis added). He challenges several evidentiary decisions at trial: (1) the admission of various out-of-court statements by D.A., (2) the

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50078

admission of statements made by a detective who interviewed D.A., and (3) the limitation of Cruz's ability to cross-examine D.A. with myriad Facebook posts. Cruz also invokes cumulative error. We affirm his conviction.

## FACTS AND PROCEEDINGS

Cruz lived with D.A. while dating her mother. Cruz's sexual abuse of D.A. is well-documented, but Cruz denies using force or threat. The relevant facts are presented alongside testimony at trial, the intricacies of which are the subject of this appeal.

The Government presented D.A. as a key witness, who testified that she was sexually abused by Cruz for years. Cruz first molested her when she was 11 years old. He would go on to have sex with D.A. countless times; on occasion, while she was gagged. D.A. testified that she did not tell anyone about Cruz's abuse because she feared him. Cruz told her that, if she disobeyed him, he would hurt her sister, her friends, and even himself. D.A. testified that Cruz sometimes acted violently, once swinging a machete near her for no apparent reason and, another time, smashing her belongings out of jealousy. Cruz stopped abusing D.A. after he found out she was pregnant. At the age of 14, D.A. gave birth to her son, and she long hid the fact that Cruz was the father.

On cross-examination, D.A. admitted that she misled investigators about who had impregnated her. In May 2019, Child Protective Services (CPS) began investigating D.A.'s mother because some of her children were exposed to methamphetamine. When CPS investigators asked D.A. if there was sexual abuse in the home, D.A. denied any abuse. When CPS later discovered that D.A. was a mother, a court hearing was held to determine paternity. Before the hearing, D.A. began to worry that Cruz might have custodial rights to her son, so she finally decided to report his abuse to the police.

Cruz's counsel also attempted to convey that D.A. did not fear or feel threatened by Cruz. For example, the defense presented evidence of D.A.'s good grades and good conduct at school. D.A. affirmed that she and Cruz had outings together; that she rode a roller coaster with Cruz; and that she posted on Facebook, "I love my life and all who are apart [sic] of it!!" which was followed by "#Nevergivingitup  #igotitall  Share if you love your life." Cruz also established that D.A.'s grandmother observed no threats and saw nothing that suggested D.A. was upset. D.A.'s friend noted that D.A. did not confide to her that Cruz was hurting her, that D.A. appeared happy, and that D.A. lied about her son's paternity. D.A. testified that Cruz had not been violent or threatening before he sexually assaulted her in Florida, and that she did not tell her family, teachers, school nurses, friends, or police that Cruz abused or threatened her.

In response, the Government offered three witnesses to rehabilitate D.A.'s credibility: Detective Tanya Lawson, Family Advocate Lori Nipper, and Investigator Phillip Oaks. D.A. had previously spoken to each of them during interviews.

Lawson, a detective with the Killeen Police Department, interviewed D.A. in November 2020. At trial, Lawson testified that D.A. recounted a sexual assault by Cruz in Florida as they packed to leave for Big Bend National Park, and then again in their kitchen at Big Bend. D.A. told Lawson that, from then on, Cruz sexually abused her almost daily, and that Cruz was forceful and made threats. She said that she was afraid of his perceived mental issues and knives. Cruz objected to Lawson's testimony as hearsay, which the court overruled. The Government's position was that the statement was admissible as consistent with D.A.'s cross-examined testimony. Then, the court expressly granted Cruz's request for a "running objection" on hearsay "so [the court and the parties] don't have . . . interruptions" to each question.

No. 22-50078

The Government's next rehabilitative witness, Nipper, interviewed D.A. after the 2019 CPS investigation turned up allegations of sexual abuse. Nipper testified that D.A. detailed her rape by Cruz in Florida and in the kitchen in Big Bend. Nipper's testimony was short on detail, saying only that "there were multiple times where [D.A.] said that [Cruz] forcefully turned her or forcefully inserted his penis into her vagina . . . [and] that he would threaten either to harm himself, her, her family, her friends." Cruz voiced no further objection during Nipper's testimony.

The Government's last rehabilitative witness was Oaks, who had interviewed Cruz twice[1] and D.A. once. Much of D.A.'s recorded interview was played for the jury. D.A.'s statements largely mirrored her trial testimony, but the recording included some additional events such as an attempted anal penetration by Cruz. Throughout the interview, Oaks made encouraging statements to D.A. such as, "You're doing a fantastic job . . . you are going down a straight path and everything is lining up." He also stated that Cruz was inconsistent while D.A. was consistent.

Cruz first raised several objections to Oaks' interview of D.A., including that defense counsel received late notice of the Government's intention to offer the recording at trial. The parties had a lengthy discussion with the court, which ultimately led to a recess for two hours to permit Cruz to review the recording. Following that review, Cruz made additional objections: He objected to the first one-minute and forty-seconds of the recording as hearsay—a speech that included Oaks' opinions, which the

---

[1] The Government played both recorded interrogations of Cruz for the jury. In the first recording from December 2020, Cruz called himself a "monster" but claimed that he had only had sex with D.A. once, when he woke up with her on top of him. The second recording was from after DNA results revealed that Cruz was the father of D.A.'s son. Cruz recounted having sex with D.A. as many as 30 times. Cruz denied telling D.A. not to tell anyone.

court agreed to redact. Cruz also referred to his earlier "running objection" to hearsay. Cruz further objected to Oaks's statements as improperly bolstering D.A. and providing improper opinions about her strength, courage, and credibility. The district court denied that objection, because Oaks's statements served as context for the jury that would help them assess credibility. All other objections were ultimately overruled.

At the close of the trial, the jury convicted Cruz on all counts. He was sentenced to life imprisonment for Counts One and Two and to 180 months of imprisonment for Count Three, to run concurrently. Cruz timely appealed. FED. R. APP. P. 4(b)(1)(A).

## STANDARD OF REVIEW

We review the district court's admission of D.A.'s out-of-court statements for plain error. To prevail, Cruz must show an error that had not been intentionally relinquished or abandoned, that was clear or obvious, and that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). We may correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

As to Investigator Oaks's statements during the recorded interview, we review the district court's decision on hearsay for abuse of discretion. *United States v. Polidore*, 690 F.3d 705, 719 (5th Cir. 2012). We apply the same standard for the admission of lay opinion testimony. *United States v. Yanez Sosa*, 513 F.3d 194, 199-200 (5th Cir. 2008). Review of evidentiary rulings in criminal trials is heightened and subject to harmless error review. *United States v. Garcia*, 530 F.3d 348, 351 (5th Cir. 2008).

Finally, we review *de novo* the district court's limitation on cross-examination as a possible Sixth Amendment violation. *United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010). If there is no violation, we

review the limitation of cross-examination for abuse of discretion, subject to a harmless error analysis. *Id.*

## DISCUSSION

### 1. D.A.'s out-of-court statements

Cruz challenges the admission of prior statements by D.A. from three sources: a recording of her interview with Investigator Oaks; testimony from Detective Lawson about her interview with D.A.; and testimony from Family Advocate Nipper about her interview with D.A. The government offered all three statements as prior consistent statements to rehabilitate D.A. following Cruz's cross-examination attack of her credibility.

The problem here is that all of D.A.'s challenged statements were made *after* 2019, when it was established that D.A. had motive to fabricate testimony to maintain custody of her child. Federal Rule of Evidence 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive *only when* those statements were made before the charged recent fabrication or improper influence or motive." *Tome v. United States*, 513 U.S. 150, 167 (1995) (emphasis added). The statements offered to rehabilitate D.A. were made *after* her alleged motive to fabricate arose. The parties agree on appeal that they were improperly presented.

As a preliminary matter, the Government contends that Cruz affirmatively waived this argument, rendering it unreviewable by this court, when Cruz elicited D.A.'s "motivation to fabricate" but failed to appropriately object to the admission of the recorded statements under Rule 801(d)(1)(B)(i). We are unpersuaded.

Waiver requires "an affirmative choice by the defendant to forego any remedy available to him, presumably for real or perceived benefits resulting

6

from the waiver." *United States v. Andino-Ortega*, 608 F.3d 305, 308 (5th Cir. 2010) (quoting *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002)), *overruled on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018). The record does not indicate any knowing choice by Cruz to relinquish this objection. As Cruz correctly notes, Rule 801(d)(1)(B)'s text does not expressly mention the temporal requirement; that requirement instead arises from case law. *United States v. Williams*, 264 F.3d 561, 575 (5th Cir. 2001). Further, there was no mention of *Tome*'s temporal requirement in the parties' extensive discussion with the trial judge regarding the admissibility of the recording. Based on the conduct of the parties and court, it is evident that no affirmative waiver occurred. Cruz's failure to object based on the timing of the recorded statements did not constitute an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Now on to the merits: The Government concedes that it introduced—through Nipper, Lawson, and Oaks—statements from D.A. made *after* 2019 when her motive to fabricate arose. Those statements were not admissible as prior consistent statements for purposes of rehabilitation. *Tome*, 513 U.S. at 160. The parties agree this was error.

However, that leaves open the question of whether these challenged statements affected Cruz's substantial rights. *See Puckett*, 556 U.S. at 135. To succeed, Cruz "must demonstrate that there is a reasonable probability that [his] trial would have come out differently but for" the admission of that evidence. *United States v. Lara*, 23 F.4th 459, 477 (5th Cir.), *cert. denied*, 142 S. Ct. 2790 (2022) (internal quotation marks and citation omitted). Any "error in admitting evidence will be found harmless when the evidence is cumulative, meaning that substantial evidence supports the same facts and

inferences of those in the erroneously admitted evidence." *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011).

We hold that there was no harm here because the statements in question were cumulative—they mirrored D.A.'s detailed in-court testimony under oath. Ample additional evidence corroborated D.A.'s account, including testimony from D.A.'s grandmother and a family friend describing Cruz's behavior toward D.A. That evidence, independent of the erroneously admitted testimony, supports the jury's decision in this case. We find no reason to reverse.

*2. Oaks's out-of-court statements*

Cruz next challenges the admission of Investigator Oaks's encouraging statements to D.A. in the interview recording as improper opinion testimony and hearsay. Cruz sufficiently raised this issue at trial. He referred to his "running objection" to hearsay, which was acknowledged by the court, immediately before arguing that Oaks's statements in the recording were inadmissible.

A declarant's out-of-court statement is not hearsay if it is not offered to prove the truth of the matter asserted. *United States v. Watkins*, 591 F.3d 780, 786 (5th Cir. 2009); *see also* Fed. R. Evid. 801(c)(2) (defining as an element of hearsay that the statement must be offered "to prove the truth of the matter asserted").

We agree with the Government that Oaks's statements to D.A. were not offered to prove their underlying truth. Although Investigator Oaks said, for example, that D.A.'s story was consistent and that she had courage, those statements were not offered to demonstrate that either of those notions were true. Statements made on investigative recordings by agents or informants as "part of a 'reciprocal and integrated' conversation" are non-hearsay statements that are properly admitted to provide context to admissible

statements. *United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995) (quoting *United States v. Murray*, 618 F.2d 892, 900 (2d Cir. 1980)). The district court determined that Oaks made the disputed statements to D.A. to build rapport and encourage her to talk. The context of Oaks's words of encouragement allowed the jury to better evaluate D.A.'s credibility— providing context for determining whether they made her more forthcoming or, perhaps, even made her less credible. That was for the jury to decide. Although the court could have redacted those statements, similar redactions were not made to Oaks's contextual statements in Cruz's interviews, and the statements do provide probative value as to credibility.

As for Cruz's objection that Oaks's statements expressed opinions, Federal Rule of Evidence 701 permits testimony in the form of opinion if it is (1) rationally based on the perception of the witness, (2) helpful to a clear understanding of the witness' testimony or determination of a fact in issue, and (3) not based on scientific, technical or other specialized expertise. *See Yanez Sosa*, 513 F.3d at 200. Again, however, the Government did not present Oaks's opinions for their truth or substance. Cruz's position here faces the same pitfall as our hearsay analysis above.

Deeming these statements to be important context, the district court appropriately observed that "the jury is going to see that for what it is and they're smart enough to do that." Oaks's statements were relevant to evaluating D.A.'s credibility, and the district court was within its discretion to make these wise determinations.

### 3. Limitation of Cross-Examination

Cruz contends that his right to confront D.A. was violated when the district court limited his use of Facebook posts on cross-examination. Cruz was prevented from presenting three short videos that D.A. took at an amusement park, and an exhibit of around 100 pages of postings from D.A.'s

Facebook, spanning 2005 to 2021. When the Government objected to the admission of those exhibits, Cruz explained that he meant to contradict D.A.'s testimony that she feared him—her social media indicated that he was a happy part of her life. The district court permitted Cruz to present only one of D.A.'s post from July 9, 2016: "I love my life and all who are apart [sic] of it!!" which was followed by "#Nevergivingitup  #igotitall  Share if you love your life."

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *see Crawford v. Washington*, 541 U.S. 36, 42 (2004). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). "The district court has 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Skelton*, 514 F.3d 433, 439 (5th Cir. 2009) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))

The district court's limitation of cross-examination did not violate the Confrontation Clause or exceed the court's discretion. The proposed exhibit of Facebook posts was voluminous and unfocused, consisting of approximately 100 pages of photos, text posts, messages, and memes from 2005 to 2021, and conveying a wide range of possible emotions. The one post that the district court permitted conveyed happiness and optimism in line with Cruz's stated purpose for presenting the proposed exhibit. The district court fairly decided that the full gamut of posts would lead to confusion and provide little further probative value. FED. R. EVID. 403; *Skelton*, 514 F.3d at 442 (holding that a court may limit evidence whose probative value is

substantially outweighed by any prejudicial effect or based on confusion of the issues or repetitive or marginally relevant interrogation). Cruz was otherwise permitted, as was his right, to thoroughly cross-examine D.A. and to offer other evidence of her demeanor with ample independent evidence purporting to contradict D.A.: She made good grades, made no reports to friends, teachers, counselors, or close family, and otherwise did not exhibit fear or anxiety.

The proposed exhibit of videos and social media posts, if presented without limitation, would not have left the jury with a significantly different impression of the witness's credibility. *See Templeton*, 624 F.3d at 223. The district court's decision to limit cross-examination did not violate Cruz's confrontation rights nor did the court abuse its discretion.

### 4. Cumulative Error

Finally, Cruz contends that cumulative error requires the reversal of his convictions on Counts One and Two. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343-44 (5th Cir. 2012) (en banc) (cleaned up).

Cruz restates the errors he challenged in this appeal along with the district court's allowance of the following statements: (1) testimony by D.A.'s grandmother, R.O., that she too had been abused and understood why D.A. kept it a secret, and (2) testimony by Detective Lawson that sexual abuse disclosures have no pattern and that "a lot of the time" the allegations occur years after the alleged abuse.

To find cumulative error, there must be errors to aggregate. *United States v. Herman*, 997 F.3d 251, 275 (5th Cir. 2021); *United States v. Nicholson*, 961 F.3d 328, 339-40 (5th Cir. 2020). Even with multiple errors, "the

doctrine necessitates reversal only in rare instances." *Delgado*, 672 F.3d at 344. Cruz's most compelling argument for error is the admission of D.A.'s statements for rehabilitation. However, considering Cruz's admissions of having sexual contact with D.A. and other evidence presented at trial, we decline to exercise the extraordinary doctrine of cumulative error here.

## Conclusion

The district court's judgment and Cruz's convictions are AFFIRMED.