# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 15, 2016

Lyle W. Cayce
Clerk

No. 15-40484

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARMANDO IBARRA, also known as Fat Boy; JULIO CESAR MALDONADO-GONZALEZ, also known as Burqueti; JORGE LUIS RAMIREZ; ANTONIO NAVAREZ REYES, also known as Tonio,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:12-CR-252-5

Before DAVIS, JONES, and GRAVES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:\*

All four defendants challenge their convictions for violating 21 U.S.C. § 846—conspiracy to possess with an intent to distribute methamphetamine. Because their numerous arguments for overturning the jury verdict lack merit, we AFFIRM the defendants' convictions.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40484

I.

Christian Salvador distributed methamphetamine in north Texas. Initially, drug cartels manufactured the methamphetamine in Mexico and transported it to Dallas as a liquid. In Dallas, Salvador's workers converted the liquid into a crystal and delivered the drugs to street-level dealers in nearby Denton.

Salvador's organization unraveled when DeAngelo Font was arrested for dealing methamphetamine in Denton. A drug investigator, Tony Salas, traced Font's methamphetamine to Salvador.

After Font's arrest, police focused their investigation on Salvador's organization. In September of 2012, they arrested Matthew Burkhardt who admitted to selling Salvador's methamphetamine in Denton. He agreed to cooperate with investigators by arranging a controlled buy against Salvador.[1]

The drug sale between Salvador and Burkhardt was scheduled for September 13, 2012. On that morning, two members of Salvador's operation, Armando Ibarra and Jorge Ramirez, went to Jose Vargas' home to "pick[] up some boxes that…contained drugs" to "take…somewhere else[,]" presumably to the controlled buy's location.

Later that afternoon, on September 13, Salvador arrived at a Dallas storage unit with Ramirez and Ibarra for the controlled buy. Police raided the unit, searched Salvador's vehicles, and arrested Ramirez, Ibarra, and Salvador. Inside the storage unit, police found plastic containers filled with methamphetamine crystals. In the vehicles, police found cans of acetone and a cardboard box filled with methamphetamine. In total, the police recovered $1.3 million worth of drugs.

---

[1] A controlled buy is an operation where the cooperating witness orders a quantity of drugs, and the police arrest the person who delivers drugs to the location.

2

No. 15-40484

After Salvador's arrest, Salas learned that his methamphetamine was converted from a liquid to a crystal at a home in Dallas and organized another raid. When police entered the residence, an overwhelming odor of chemicals struck them.[2] They observed a conversion lab in the kitchen sitting on a fold-out table. Police found a driver's license in the kitchen belonging to Antonio Reyes located within five feet of the conversion lab. They also recovered $100,000 worth of methamphetamine at the home.

A grand jury indicted sixteen people for a conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Eleven pled guilty; four went to trial: Ibarra, Ramirez, Reyes, and Julio Cesar Maldonado Gonzalez.[3]

At trial, Vargas testified for the government. He said that on September 13 he gave methamphetamine to Ramirez and Ibarra so they could deliver it elsewhere. Vargas also described how he received his supply of drugs. Vargas testified that Reyes would provide him methamphetamine hidden in car batteries.

Reyes also testified. He explained that he lived at the Dallas home with Aaron Hernandez—Salvador's partner. According to Reyes, he worked as a roofer, leaving home at 7:00 a.m. and returning at 7:00 p.m., and so he never saw drugs or a conversion lab in the home.

However, Reyes admitted that he returned home early on September 11 and noticed an "awful smell." Reyes said that he had "never smelled that" odor before and did not "know what it was." Reyes believed "something wasn't right" and told Hernandez that he would move out at the end of the month

---

[2] A pungent chemical smell is released when heat is applied to methamphetamine during the conversion process.

[3] Another defendant, Aaron Hernandez, escaped capture and remains a fugitive.

No. 15-40484

During trial, Ibarra moved to sever his prosecution arguing that statements made by other defendants prejudiced him. The district court denied his motion to sever, and in its jury instructions, told the jury to consider the evidence against each defendant separately and individually.

Also, Reyes objected to the district court's "deliberate ignorance" jury instruction which the court overruled.

The jury convicted all four defendants of violating 21 U.S.C. § 846. To prove a drug conspiracy, the government must show: the existence of an agreement between two or more persons to violate narcotics laws; that the defendant knew of the agreement; and that he voluntarily participated in the conspiracy.[4]

## II.

The defendants make four arguments for overturning the jury verdict. We address each in turn:

A.   VENUE

Each defendant argues that the evidence was insufficient to establish venue in the Eastern District of Texas. This issue was given to the jury, which found that the government established venue. We "review the denial of a motion for judgment of acquittal *de novo*. We will affirm a verdict if, viewing all the evidence in the light most favorable to the government, a rational jury could conclude, from the evidence presented at trial, that the government established venue by a preponderance of the evidence."[5]

The defendants argue that the government did not show that they committed an overt act in the Eastern District.[6] In a conspiracy case, venue is

---

[4] *United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir. 2008).

[5] *United States v. Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009).

[6] The defendants' various other arguments against venue are without merit, including Reyes' claim that Burkhardt's testimony cannot be used because he became an informant after being arrested; Gonzalez' assertion that Salas did not identify at trial the street-level

proper "in any district where the agreement was formed or an overt act occurred."[7] An overt act "can be based on evidence of any single act that initiated, perpetuated, or completed the crime."[8] Moreover, venue is proper as to any member of the conspiracy, so long as one co-conspirator committed one overt act there.[9]

Enough evidence existed for the jury to find that an overt act occurred in the Eastern District. While the defendants' conduct primarily occurred in Dallas, their actions supported an organization that sold methamphetamine in Denton, which is in the Eastern District.[10]

Specifically, the defendants converted methamphetamine that was supplied to Salvador's organization's street-level dealers in Denton. For example, police arrested Font for selling Salvador's methamphetamine in Denton.[11] Similarly, Burkhardt admitted that he sold methamphetamine in Denton for Salvador. Thus, ample evidence proved that defendants joined a conspiracy that committed overt acts in Denton.

B. DRUG CONSPIRACY

Ramirez and Reyes argue that the evidence was insufficient to establish their guilt in various respects. We review sufficiency of the evidence challenges under a familiar standard:

---

dealers who sold methamphetamine for Salvador; Gonzalez argument that the street-level dealers for Salvador were only arrested in Denton but actually sold their drugs only in other jurisdictions.

[7] *United States v. Rodriguez-Lopez*, 756 F.3d 422, 429-30 (5th Cir. 2014).

[8] *Mendoza*, 587 F.3d at 686.

[9] *See id.* at 430; *Mendoza*, 587 F.3d at 686.

[10] *See, e.g.*, *id.* at 687 (holding an overt act occurred in the Eastern District of Texas, because the defendant supplied methamphetamine to an uncharged third-party who sold it at the street level in the Eastern District).

[11] Ibarra's argument that this statement is inadmissible hearsay is without merit because Salas merely described his personal investigation rather than some out-of-court statement.

No. 15-40484

We review a challenge to the sufficiency of the evidence supporting a conviction by reviewing all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. [12]

i.

Ramirez argues the government did not prove that he had knowledge of the conspiracy. However, this argument is belied by the record.

The government provided more than enough evidence for a rational jury to find that Ramirez knew about the drug conspiracy. First, Ramirez was arrested at the storage unit where police found $1.3 million worth of methamphetamine.[13] Second, Ramirez admitted that he moved a large cardboard box containing methamphetamine from the storage unit.[14] Third, coded text messages on Salvador's phone revealed Ramirez's picture and stated that Ramirez picked up acetone and drugs on September 13. Finally, Vargas confirmed that Ramirez picked up drugs from him to transport them for sale. Thus, the evidence was more than sufficient for the jury to find that Ramirez had knowledge of the conspiracy.

ii.

Reyes argues that the government did not prove that he participated in the conspiracy. A defendant's participation in the conspiracy may be inferred

---

[12] *United States v. Haines*, 803 F.3d 713, 734-45 (5th Cir. 2015).

[13] *Cf. United States v. Delgado*, 672 F.3d 320, 334 (5th Cir. 2012) (en banc) (recognizing that possession of a large quantity of drugs supports the defendant's participation in the conspiracy).

[14] While Ramirez claimed that he did not know the box's contents, this is unlikely because the box was secured by only a folding flap, and it contained eight plastic containers, each holding a kilogram of methamphetamine.

from circumstantial evidence.[15] Moreover, the defendant need not "know all the details of the unlawful enterprise or have a major role."[16]

Here, too, more than enough evidence existed for a rational jury to find that Reyes participated in the drug conspiracy. Reyes admitted at trial that he lived in the Slater-residence where the conversion lab was found. Moreover, police found his driver's license within five feet of the conversion lab located conspicuously in the kitchen. Also, Vargas testified that Reyes gave him methamphetamine.[17] Thus, the jury could reasonably infer that Reyes participated in the conversion of methamphetamine in his home.

C. DELIBERATE IGNORANCE INSTRUCTION

Reyes argues that the district court erred by giving the jury a deliberate ignorance instruction.[18] We review a district court's jury instruction for an abuse of discretion, and any error is subject to harmless error review.[19] The

---

[15] *United States v. Greenwood*, 974 F.2d 1449, 1457 (5th Cir. 1992) ("Because secrecy is the norm in an illicit conspiracy, the elements of the offense may be established solely by circumstantial evidence.").

[16] *United States v. Chon*, 713 F.3d 812, 819 (5th Cir. 2013).

[17] Both Ramirez and Reyes argue that Vargas was an unreliable witness. According to Ramirez and Reyes, Vargas is unreliable because he failed to identify them during his initial interview but then pointed them out at trial, which occurred after Vargas had pled guilty. This argument is unavailing. *See, e.g.*, *United States v. Martinez-Garcia*, 560 F. App'x 253, 260 (5th Cir. 2014) ("As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution or leniency, may be constitutionally sufficient evidence to convict."). Moreover, "[w]e must accept all credibility choices made by the trier of fact." *Haines*, 803 F.3d at 734-45.

[18] The district court instructed the jury: "You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of a defendant cannot be established merely by demonstrating that a defendant was negligent, careless, or foolish, knowledge can be inferred if a defendant deliberately blinded himself to the existence of a fact. A defendant must subjectively believe that there is a high probability that a fact exists and the defendant must take deliberate actions to avoid learning of that fact."

[19] *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006); *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008) ("Any [deliberate ignorance instruction] error is subject to harmless error review.").

deliberate ignorance instruction should be "given when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference."[20]

Reyes asserts that the deliberate ignorance instruction was error, because at trial, he admitted to actual knowledge of the unlawful activity. However, Reyes never admitted to actual knowledge of unlawful methamphetamine conversion.[21] Reyes stated explicitly that he never saw a conversion lab in the residence. Also, he claimed that he never saw drugs at the home. While admitting that he noticed an "awful smell" which made him think "something wasn't right," he never claimed that he knew this smell derived from something unlawful. Instead, Reyes said that he "never smelled that [odor] and I don't know, I don't know what it was." Thus, his general assertion that "something wasn't right" is insufficient to show Reyes admitted to actual knowledge of methamphetamine conversion in the home, and the instruction was proper.

D. MOTION TO SEVER TRIAL

Ibarra argues that the district court erred when it denied his motion to sever his trial. We review the district court's denial of a motion to sever for an abuse of discretion.[22]

First, Ibarra argued that the admission of his codefendant's statements violated *Bruton v. United States*, 391 U.S. 123 (1968). Under *Bruton*, the admission of a statement by one codefendant, which implicates another

---

[20] *Id.*

[21] If Reyes had admitted to actual knowledge of methamphetamine conversion, this would make any error in giving the deliberate ignorance instruction harmless. *See United States v. Gonzalez*, 612 F. App'x 246, 247 (5th Cir. 2015) ("Any error in giving such an instruction is harmless if substantial evidence showing actual knowledge was adduced at trial.").

[22] *United States v. Whitfield*, 590 F.3d 325, 356 (5th Cir. 2009).

No. 15-40484

codefendant, violates the Sixth Amendment, if admitted in a joint trial and the person making the statement did not take the stand.[23]

Ibarra asserts that Salas' testimony that Ramirez admitted to "assist[ing] in loading the big box located in the back of the pickup" implicated him. According to Ibarra, Ramirez statement "indicated that others were involved in handling [the box,]" which could have included him. However, Ramirez statement that he "assisted in loading" the box was general and did not explicitly or implicitly reference Ibarra. Thus, admission of Ramirez statement did not implicate Ibarra and violate his Sixth Amendment right.

Second, Ibarra argues that he was prejudiced by the "spill-over" effect of evidence against other defendants. However, a "spillover effect, by itself, is an insufficient predicate for a motion to sever."[24] Because Ibarra's spillover is insufficient to justify a motion to sever, the district court did not abuse its discretion.

### III.

For these reasons, we AFFIRM the judgment of the district court.

---

[23] 391 U.S. at 135-36.

[24] *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002).