# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2011

No. 09-10917

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

LARRY DONNELL SMITH,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:08-CR-23

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Appellant Larry Donnell Smith was adjudged guilty after a jury verdict on three counts of a federal grand jury indictment: possession with intent to distribute a controlled substance (cocaine base);[1] felon in possession of a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).

No. 09-10917

firearm;[2] and possession of a firearm in furtherance of a drug trafficking crime.[3] He was sentenced by the United States District Court for the Northern District of Texas to a total of 200 months of imprisonment—140 months on the first two counts and a consecutive 60 months for the third count. He was also sentenced to a total of four years of supervised release. Smith appeals his conviction, claiming that the district court erred in its admission of evidence. Finding no reversible error, we affirm his conviction. He also appeals his sentence on count three, but that issue has been foreclosed by an intervening Supreme Court decision. Accordingly, we also affirm his sentence.

## I

The following facts were adduced at trial. Law enforcement officials entered Smith's home pursuant to a search warrant, executed in part by Investigator Bobby Dilbeck. Smith and three women found inside the house were handcuffed and detained in the front yard while Dilbeck made a quick visual inspection while passing through the house to determine how to focus the search appropriately. He saw in the living room a set of digital scales, and in the master bedroom another set of scales, cash, a plastic baggy containing what appeared to be drugs, a handgun, and a chunky white substance that also appeared to be drugs. Dilbeck then went to the front yard and told Smith that he had seen a gun and drugs in the house. Smith stated that everything in the house was his. Dilbeck did not expect such a statement and said, in effect, "[S]o you're telling me everything I find in this house belongs to you?" Dilbeck testified that Smith responded, "[Y]es, the girls didn't have anything to do with it."

---

[2] 18 U.S.C. §§ 922(g)(1), 924(a)(2).

[3] 18 U.S.C. § 924(c)(1)(A).

No. 09-10917

Inside the home, agents found two loaded handguns, both of the same caliber, one in a dresser drawer in the master bedroom and one in the closet of the master bedroom, and a box of ammunition of the same caliber in a kitchen drawer. The search also yielded the following from the master bedroom: drug "cut," or dilutant—the chunky white substance; a set of digital scales, of the kind Dilbeck testified is commonly used for measuring small amounts of drugs for sale; $985 in cash found in a dresser drawer; a baggy containing methamphetamine in the same drawer; a bag containing three smaller baggies of cocaine base (crack), totaling 15.67 grams, on the floor; and a cereal box containing five baggies of cocaine base, totaling 28.17 grams, also on the floor. The agents found a set of digital scales in the living room; a small amount—.11 gram—of cocaine base on top of a cabinet in the dining area; a set of digital scales in the laundry room; and small blue plastic baggies. Officials also found $500 in cash in Smith's pocket.

A few days after Smith's arrest, Special Agent Blake Gordon of the Bureau of Alcohol, Tobacco, Firearms and Explosives met with him in jail. Gordon gave Smith his *Miranda* warnings, and Smith waived his rights. Smith told Gordon that he would give the Government the names of his drug suppliers. Smith insisted on speaking to Inspector Dilbeck, whom Gordon brought back with him for a second interview with Smith. Before that second interview, the officers again read Smith his *Miranda* rights, which he again waived. During that interview, Smith told Gordon and Dilbeck the names of his two suppliers of crack cocaine and the name of a third person as his supplier of methamphetamine. Though during trial he contested ownership of the contraband found in his home, he never attempted to blame anyone else for it during his interviews with Gordon and Dilbeck.

At trial, Smith also disputed his residency in the house searched. Shemeia Wyatt, the mother of two of Smith's children, testified that the residence

3

searched was her home, and that Smith visited and spent the night occasionally. The Government introduced the lease for the house searched, which listed Smith and Wyatt as co-tenants, and two receipts for laundry and dry-cleaning in Smith's name, which were found in the house and bore dates within days of the search. In addition, another witness for the defense testified that she had known Smith all of his life and that he lived in the house with his wife and kids. Smith listed the address of that house as his residence on his jail intake form. Shrenna Hargrove, one of the other women detained at the house during the search, also testified that she had known Smith all of her life and that the house was his.

Wyatt and Hargrove testified that Roderick Merchant, Wyatt's cousin, was a guest in the house and had slept in the master bedroom with Hargrove the night before the search. Both women also testified that Merchant had brought the drugs and related items into the house. Merchant was arrested in possession of cocaine and some amount of currency a few blocks away on the same day Smith was arrested. There was conflicting testimony as to how long Merchant had stayed in the house—from two nights to one week—but Wyatt and Hargrove both testified that he had brought in a black bag containing clothes; officials found that bag in the master bedroom during the search. Wyatt testified that Merchant was sometimes in the house by himself.

Smith stipulated to possession of one of the firearms and to being a convicted felon. He disputed ownership of the second handgun, but Agent Gordon testified that Smith had admitted to ownership of that firearm, as well, during the first interview when Smith was in jail. Gordon also testified that the cash seized was drug proceeds and that Smith possessed the handguns as protection against dope fiends and drug dealers.

Prior to trial, the Government had filed a notice of intent, pursuant to Federal Rule of Evidence 404(b), to introduce evidence of three of Smith's prior

No. 09-10917

convictions, one for possession of methamphetamine and two for manufacturing or delivering a controlled substance. The Government later filed a supplemental notice of intent to introduce officer testimony about Smith's possession charge, as well as photographs, laboratory reports, and the actual drugs seized for that charge. During the trial, the arresting officer for the possession charge testified that he had arrested Smith about a year earlier; the Government also submitted into evidence photos taken at the scene of that arrest, as well as the actual drugs seized. The district court gave a limiting instruction to the jury after the officer's testimony, stating that they could "consider that evidence only for purposes of intent and knowledge in [the case at hand] and for no other reason." Over Smith's objection, the Government also introduced Smith's two judgments of conviction from several years before for manufacture or delivery of a controlled substance. In the final charge to the jury, the district court gave instructions almost identical to the Fifth Circuit Pattern Jury Instruction[4] regarding the jury's limited consideration of evidence of similar acts.

The jury found Smith guilty on all three counts, and the district court sentenced him several months later. This appeal followed. Smith raises three issues on appeal. First, he argues that the district court erred in admitting his pre-*Miranda* warning statements to Investigator Dilbeck on the day of the search. Second, he contends that the district court erred in admitting evidence of his prior conviction for possession of methamphetamine. Smith's third issue, regarding his sentence, has been foreclosed by an intervening Supreme Court decision, as Smith conceded at oral argument.

---

[4] *See* FIFTH CIR. CRIM. PATTERN JURY INSTR. (2001) § 1.30.

No. 09-10917

## II

Smith argues that the district court erred in admitting his statements to Dilbeck—that everything in the house was his—after Dilbeck performed the initial walk-through of Smith's house and before the actual search. He contends that the statements were inadmissible because they were made before he had been given the *Miranda* warnings, and that those warnings were required because he was in custody and his statements were a product of interrogation.

### A

We must first resolve a dispute between the parties as to the correct standard of review to apply to Smith's assertion of error. Smith contends that he raised the *Miranda* issue below. The Government responds that Smith did not make this argument below, and we should therefore review for plain error. We agree with the Government.

Smith filed a motion objecting to the admission of all evidence that was the product of the search conducted, on the grounds that the affidavit supporting the search warrant contained false statements made with reckless disregard for the truth.[5]  His motion, which the district court denied, did not raise the *Miranda* issue, and his objection to the evidence produced by the search was not "sufficiently specific to afford the trial court the opportunity to take appropriate action" on the issue.[6]  Neither did Smith object at trial to the admission of those statements. We conclude, therefore, that Smith did not raise the issue below, and we will review the statements' admission for plain error.

---

[5] *See Franks v. Delaware*, 438 U.S. 154, 171 (1978).

[6] *See United States v. Seale*, 600 F.3d 473, 487 (5th Cir.), *cert denied*, 131 S. Ct. 163 (2010); *see also United States v. Mejia*, 844 F.2d 209, 214 (5th Cir. 1988) (holding that an objection on hearsay grounds did not preserve for appeal an exception to the hearsay rule that was not specifically raised).

No. 09-10917

Before we will grant relief under plain error review, Smith must establish that (1) there was an error; (2) the error was obvious; and (3) the error affected his substantial rights.[7]   In addition, we will only correct an error implicating substantial rights if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[8]

## B

Under *Miranda v. Arizona*, the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[9]   In this case, the Government concedes that Smith was in custody and did not receive the well-known *Miranda* warnings prior to making the statements to Dilbeck that everything in the house was his.   Smith contends that his statements were in response to interrogation.

We do not reach this argument, however, because the statements' admission into evidence, even if erroneous, was not plainly erroneous: it did not harm Smith's substantial rights because it did not affect "the outcome of the district court proceedings."[10]   The jury heard substantial evidence pointing to Smith's possession of the drugs and other contraband, including testimony regarding Smith's post-*Miranda* warning statements in which he named his suppliers for drugs of the same kind found in the house during the search.   Even without the un-Mirandized statements, the evidence was sufficient for the jury to find Smith guilty beyond a reasonable doubt on counts for possession with

---

[7] *See United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007).

[8] *Seale*, 600 F.3d at 488 (brackets omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[9] 384 U.S. 436, 444 (1966).

[10] *See Olano*, 507 U.S. at 734.

7

intent to distribute a controlled substance and possession of a firearm in furtherance of a drug trafficking crime. Thus, the admission of the challenged statements did not affect the outcome of the proceedings.

Smith argues that the Government's closing argument heavily focused on his pre-*Miranda* warning statements, and that such emphasis prejudicially contributed to his conviction. It is true that the Government, in its closing argument, reminded the jury four times that Smith had told Dilbeck that everything in the house was his. But the Government also spent a significant portion of its closing statement reviewing other evidence that showed Smith's possession of the contraband in the house. Smith has not carried his burden to show that any error committed by the district court in admitting the statements must have affected the jury verdict.[11] We conclude that the district court did not plainly err in admitting Smith's statements.

### III

The district court admitted evidence, pursuant to Federal Rule of Evidence 404(b), of Smith's 2008 conviction for methamphetamine possession. The admitted evidence included the judgment of conviction, photographs showing the drugs giving rise to the arrest, photographs of Smith's vehicle (a Cadillac), and the actual methamphetamine seized during the arrest. Smith argues that the district court erred in admitting all of this evidence.

### A

The parties disagree as to the proper standard of review on this issue, as well. Smith contends that we should review this decision by the district court under the heightened abuse of discretion standard we apply to the admission of

---

[11] *See id.* ("In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.").

No. 09-10917

404(b) evidence if the objection was originally made in the district court.[12]  The Government argues that plain error review applies because Smith did not make the narrow objection that he makes on appeal—that the photos and actual drugs from the prior conviction were inadmissible—to the district court.[13]  Each party is partially correct.

Smith objected below to the admission of the fact of his conviction, and he argues to this court, albeit briefly, that the admission was error.  He also objected to the admission of the photographs taken during the arrest, and also argues on appeal that their admission was erroneous.  We thus review the admission of the judgment of conviction and the photographs for abuse of discretion.  Smith did not object to the admission of the actual methamphetamine seized during the arrest; we therefore review for plain error.

Because "[e]vidence in criminal trials must be strictly relevant to the particular offense charged," we apply a heightened—i.e., less tolerant—abuse of discretion standard of review to the district court's decisions to admit evidence pursuant to Rule 404(b).[14]

**B**

Evidence of prior offenses or bad acts may not be introduced "to prove the character of a person in order to show action in conformity therewith."[15]  But such evidence may be admissible to prove, among other things, the defendant's intent, knowledge, or absence of mistake or accident.[16]  We employ the two-step

---

[12] *See United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003).

[13] *See United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009).

[14] *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 1530 (2011).

[15] FED. R. EVID. 404(b).

[16] *Id.*

No. 09-10917

*Beechum* test to determine whether evidence should be admitted under Rule 404(b).[17] First, we determine whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character."[18] Second, we consider whether the probative value of the evidence is substantially outweighed by its undue prejudice.[19]

Smith's defense at trial was that the drugs seized from his home were not his, but had been brought into the house by Merchant—in other words, Smith just happened, by accident, to be in the house with the drugs. We have previously held that prior crimes evidence was admissible to refute a defendant's "wrong place at the wrong time" defense.[20] Smith's prior conviction for methamphetamine possession countered that defense by providing evidence of his familiarity with illicit drugs, and that the drugs were in his home not just as a result of an unfortunate coincidence.[21] The photographs taken at the time of his prior arrest showed Smith's car and the baggies of methamphetamine found inside the car, similar to those found in Smith's home in the instant case. The photos provided evidence of Smith's knowledge of the specific nature of the packages found inside his home. The photograph of Smith's car is also relevant, as it provides context for the photos of the drugs found inside.

---

[17] *Templeton*, 624 F.3d at 221 (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)).

[18] *Id.* (citing *Beechum*, 582 F.2d at 911).

[19] *Id.* (citing *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009)); *see* FED. R. EVID. 403.

[20] *United States v. Hernandez-Guevara*, 162 F.3d 863, 872 (5th Cir. 1998).

[21] *See United States v. Lindell*, 881 F.2d 1313, 1319 (5th Cir. 1989) (holding that evidence of the defendants' personal cocaine use was relevant to their knowledge regarding the charge of conspiring to import marijuana because it "demonstrated their familiarity with illegal drugs").

No. 09-10917

The probative value of this evidence in proving Smith's knowledge and lack of mistake or accident in the possession of the contraband seized from his house was not substantially outweighed by the danger of unfair prejudice.[22] In addition, the district court's instructions to the jury properly limited the scope of their consideration of the evidence.[23] The district court did not abuse its discretion in admitting it. Likewise, the district court committed no plain error in admitting the actual bags of methamphetamine.[24]

## IV

Finally, Smith argued that the district court erred in imposing a 60-month mandatory minimum sentence, pursuant to 18 U.S.C. § 924(c)(1)(A), to run consecutively to his sentence on the other two counts. As Smith conceded at oral argument, however, the Supreme Court's recent decision in *Abbott v. United States* forecloses that argument,[25] and Smith's claim fails.

\* \* \*

We AFFIRM.

---

[22] *See United States v. Leahy*, 82 F.3d 624, 637 (5th Cir. 1996) ("[E]xclusion of extrinsic evidence based on its prejudicial effect should occur only sparingly." (internal quotation marks and citation omitted)).

[23] *See id.* ("[T]he district court thoroughly instructed the jury concerning the limited use of the extrinsic evidence, thereby minimizing its possible prejudicial effect.").

[24] *See United States v. Duffaut*, 314 F.3d 203, 209-10 (5th Cir. 2002) (holding that the district court did not commit plain error in admitting physical evidence of the defendant's prior drug arrest, in addition to the fact of the arrest itself, when the evidence was relevant under Rule 404(b) and the district court gave a limiting instruction).

[25] *See* 131 S. Ct. 18, 23 (2010) (holding that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction").