

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00163-CR

BARRY ANTHONY WILLIS, JR.                    APPELLANT

V.

THE STATE OF TEXAS                              STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
TRIAL COURT NO. 2014-0173M-CR

----------

### MEMORANDUM OPINION[1]

----------

In three points, Appellant Barry Anthony Willis, Jr. appeals his conviction for money laundering of an amount between $1,500 and $20,000. *See* Tex. Penal Code Ann. § 34.02 (West 2016). We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

### I. The initial traffic stop

In the midafternoon of July 5, 2014, the vehicle in which Appellant was riding as a passenger was pulled over by Trooper Ronald Nelson for speeding.[2] Trooper Nelson testified that, as he approached the vehicle, he detected the odor of marijuana.[3] When the driver, Alexia Gonzalez, admitted that she did not have a driver's license, Trooper Nelson asked her to exit the vehicle. Appellant remained in the passenger seat.

Once outside the vehicle and sitting in the front passenger seat of the patrol car, Gonzalez told Trooper Nelson that she and Appellant were driving from Amarillo to Dallas to buy a car, although she did not know when they left Amarillo and did not know what kind of car they intended to purchase. Gonzalez claimed the vehicle belonged to her mother, but when Trooper Nelson ran the license plate number in the state system, it showed that the car belonged to another woman whom Appellant later identified as his wife.[4] Gonzalez denied that there was any marijuana in the car, but when questioned, she admitted that

---

[2]A dashboard-camera video recording of the stop was admitted into evidence and played for the jury.

[3]In the video recording, another trooper can also be heard remarking that there was a faint smell of marijuana coming from the car.

[4]Although Appellant was not formally married to the woman, Appellant said that she was the mother of his child and he considered her to be his wife.

there was a large amount of cash—she estimated between $5,000 to $6,000—in the vehicle.

Trooper Nelson returned to the passenger side of the vehicle, where Appellant was talking on his cell phone, and asked Appellant to end his call, step out of the car, and leave his cell phone on the passenger seat. Appellant complied and once he emerged from the vehicle, Trooper Nelson read Appellant his *Miranda* rights. Appellant told Trooper Nelson that he and Gonzalez had recently been to a casino in Oklahoma, that Gonzalez worked as a stripper in Amarillo, and identified his wife as the owner of the vehicle.

When asked if he had any "large amounts of money" in the vehicle, Appellant initially responded, "No, sir," but when Trooper Nelson pressed him on the matter, Appellant admitted that he had a substantial amount of money in his pocket because he and Gonzalez intended to purchase a vehicle in Dallas. When Trooper Nelson asked Appellant to hand him the money, Appellant complied without protest and removed approximately $10,000[5] from his pocket. According to Trooper Nelson, part of the money was folded over in half and part of it was "bundled up with two rubber bands on each side."

Throughout their interaction, Appellant was cooperative and courteous. He joked with Trooper Nelson during a pat-down search. Trooper Nelson testified that Appellant was never rude or aggressive and Appellant never threatened

---

[5]At some points in the record, the amount is referred to as $9,866.

Trooper Nelson. After the pat-down search, Trooper Nelson asked Appellant to stand where Gonzalez was standing at the back of the patrol car. Trooper Nelson then asked Gonzalez to come to the front of the patrol car. There, Trooper Nelson performed a pat-down search of Gonzalez. By contrast, Gonzalez was petulant and uncooperative during her pat-down search. Although she attempted to hide it and claimed it was just a tampon, the search revealed a plastic baggie containing a small amount of marijuana tucked into her shorts.[6] Trooper Nelson then handcuffed Gonzalez and placed her in the front passenger seat of his patrol car.

Trooper Nelson returned to the rear of the patrol car and spoke to Appellant, who insisted that he did not have any drugs on him and denied knowing of any contraband in the vehicle. Trooper Nelson radioed for an additional trooper to join the scene and assist him in counting the money and searching the vehicle. While they waited, Appellant told Trooper Nelson that there were "a lot of clothes" in the vehicle but again denied that the vehicle contained any contraband. Appellant also explained that Gonzalez had been looking online at cars and repeated that she was a stripper in Amarillo.

After Gonzalez consented to a search of the vehicle, Trooper Nelson searched the vehicle and radioed for a drug dog. Once the dog arrived, it alerted

---

[6]A female police officer was called to the scene to retrieve the baggie.

4

to the vehicle, indicating that it had picked up the scent of methamphetamine, marijuana, heroin, or cocaine.

At that point, two hours after the initial stop began, the troopers escorted Appellant and Gonzalez, separately, to a local DPS office for further investigation. While Trooper Nelson testified that Appellant was not under arrest at that point, he agreed that Appellant was not free to leave.

## II. Interview of Appellant

Once at the DPS office, Appellant was interviewed by Lieutenant Steven Schwartz.[7] Throughout the interview, Appellant was forthcoming and cooperative, and Lieutenant Schwartz testified that Appellant was a "perfect gentleman" throughout the interview. Appellant told Lieutenant Schwartz that he had met Gonzalez at a strip club and they were on a romantic vacation.[8] Appellant told Lieutenant Schwartz that he and Gonzalez had left Amarillo the day before and drove to Lawton, Oklahoma, to visit his sister and that they had spent the night at a friend's house. Appellant also told Lieutenant Schwartz that Gonzalez wanted to go to Dallas to buy a car and that the pair planned to do some shopping and perhaps visit Hurricane Harbor while they were there.

---

[7]An audio recording of the interview of Appellant by Lieutenant Schwartz was admitted into evidence and played for the jury at trial.

[8]Appellant noted that his wife was not aware that it was a romantic getaway with Gonzalez and that she would not be happy to hear about it.

5

Appellant claimed $6,000 of the money belonged to Gonzalez and was money she had earned as a stripper. Although he was employed as a dock worker at an Amarillo bakery, Appellant claimed that the remaining $4,000 belonged to him. He explained that the reason he was holding all of the money in his pocket was because the basketball shorts that Gonzalez was wearing had no pockets, and she had asked Appellant to hold onto her money for her. Appellant denied using marijuana and denied knowing where Gonzalez had obtained marijuana.

During the interview with Lieutenant Schwartz, Appellant consented to Lieutenant Schwartz's viewing photographs on his phone, which had been seized during the search of the vehicle. A search warrant was subsequently obtained to allow the troopers access to the cell phone in order to conduct a forensic analysis. Another trooper testified at trial that he was able to determine the dates some but not all of the photographs were taken through forensic analysis of the cell phone.

Appellant and Lieutenant Schwartz also discussed a text message on Appellant's phone that was dated three days earlier and that read "One whole day to sell a pound, I'm on my game." The actual text message was not offered or admitted into evidence, but at trial Lieutenant Schwartz testified that he interpreted that text as Appellant's bragging to a friend that he had sold "a lot of dope." During the interview, Appellant claimed that he had purchased the phone from a friend and that text message belonged to his friend.

6

## III. The trial

After the interview with Lieutenant Schwartz, Appellant was charged with money laundering. *See id.* In addition to the above evidence, the following evidence was admitted at trial.

### A. Evidence retrieved from Appellant's phone

Several photographs taken in the six months leading up to Appellant's July 2014 arrest were recovered from Appellant's phone and admitted at trial. These included

- photographs of Appellant from January 2014 holding several bundles of $20 bills while sitting in the front seat of a car;

- photographs from February 2014 that depicted a nightstand drawer and a small duffel bag filled with bundles of $20, $50, and $100 bills as well as five photographs of stacks of money spread across a bed. Two of these photographs included a hand wearing a gold watch and a gold ring that appeared to match a watch and ring worn by Appellant in a separate photograph;

- five photographs from April 2014 of stacks of money spread across a bed, including multiple $20 and $100 bills;

- four photographs from May or June 2014 depicting several bundles of cash folded over and tied with a rubber band piled on a couch;

- a photograph from June 2014[9] of Gonzalez holding two gallon-size Ziploc bags containing bundles of cash; and

- three photographs from June 2014 of Appellant holding two gallon-sized Ziploc bags containing bundles of cash held together with rubberbands.

---

[9]Some of the testimony appears to have mistakenly referred to the date of the photograph as June 2015. Based on our review of the record and the fact that Appellant was arrested in July 2014, we have determined that those references are incorrect and the correct date was June 2014.

7

Additional photographs were admitted into evidence but the record does not establish the dates these photographs were taken:

- three photographs of what Lieutenant Schwartz described as a "high-grade" bud of marijuana;

- a photograph of Appellant holding two large stacks of cash, each with a $100 bill on top; and

- a photograph depicting a piece of notebook paper with several cities—including Austin, Las Vegas, Denver, Brownwood, and Corpus Christi—and addresses, phone numbers, and websites written on it.

## B. Drug dog test results

The State also submitted evidence at trial of the results of a drug dog test performed in addition to the one that occurred at the scene of the initial stop. In that test, after the dog was presented with four identical envelopes, one of which contained the money recovered from Appellant, the drug dog alerted to the envelope. According to the testimony of the dog's handler, this indicated that the money had been in the presence of narcotics.

## C. Items recovered from the vehicle

During a search of the vehicle, DPS officers found two marijuana cigars in the trunk of the vehicle and a notebook with four pages of handwriting in it in the seating area. Photocopies of the four pages were admitted into evidence. One page contained a single phone number, a second page contained four phone numbers, a third page contained writing that had been scribbled over in such a way that it was illegible, and the fourth page contained more scribbled-over writing and the three digits "580" listed six times. Lieutenant Schwartz and

8

Trooper Nelson both testified that they did not attempt to call any of the phone numbers written on the pages, but the trial court took judicial notice of the fact that 580 is the area code for Lawton, Oklahoma.

### D. Testimony about characteristics of drug traffickers

Lieutenant Schwartz testified to his experiences as an investigator specializing in narcotics investigations. According to Lieutenant Schwartz, drug traffickers share the following general characteristics: (1) they deal only in cash because it cannot be easily traced; (2) they keep cryptic notes—for instance, notes that list phone numbers without corresponding names in order to keep track of their client list; (3) they are found with only a large sum of money or narcotics, not both at the same time; and (4) they do not drive their own vehicles because "law enforcement typically does not seize vehicles that are registered to a third person."

According to Lieutenant Schwartz, $10,000 could buy about two pounds of high-grade marijuana in the Dallas/Fort Worth area, a "central distribution hub" for drug trafficking, and a pound of high-grade marijuana would fit in two gallon-size Ziploc bags.

### E. Defendant's case

Appellant's sister and brother-in-law testified on his behalf at trial. Both testified that they had given to Appellant a total of approximately $10,000 in cash that they had received in life insurance proceeds in late February and March of 2014 to help him buy a car. Contrary to his assertion at the scene regarding the

9

source of the funds, Appellant argued at trial that this was the same $10,000 recovered when Appellant and Gonzalez were pulled over.

## IV. The conviction

The jury found Appellant guilty of money laundering, and a punishment of 15 years' confinement was assessed by the court.

## Discussion

## I. Motion to suppress

In his first point, Appellant argues that the trial court erred by denying his motion to suppress the drug dog alert on the money, his interview, and photographs seized from his phone because this evidence was obtained as the result of an "illegal arrest and subsequent search."

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When, as here, the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093

11

(2009).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  *Amador*, 221 S.W.3d at 672.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions."  *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres*, 182 S.W.3d at 901.  A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in the code of criminal procedure.  *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2015 & Supp. 2016).

Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed.  *Torres*, 182 S.W.3d at 901–02.  Probable cause must be based on specific, articulable facts rather than the officer's mere opinion.  *Id.* at 902.  We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest.  *Id.*

### C. Application

#### 1. The cell phone and the money

Appellant argues that his cell phone and the money were both recovered as a result of his arrest, but this is incorrect. Both the cell phone and the money were recovered from a search of the vehicle, to which Gonzalez, as the driver of the car, consented. *See Meekins v. State*, 340 S.W.3d 454, 458–65 (Tex. Crim. App. 2011) (discussing consent exception to warrant requirement for searches). Appellant does not contest the search or seizure of the vehicle, Gonzalez's consent to the search of the vehicle, Gonzalez's arrest, or the warrant obtained by the State to search the contents of the cell phone. Appellant's argument for suppression of the money and the evidence found on the cell phone therefore fails.

#### 2. Appellant's "arrest"

Appellant argues that he was arrested without probable cause when he was transported to the DPS office while handcuffed and in a patrol car.[10] Even if we were to assume, without deciding, that Appellant was arrested at the time he was transported to the DPS office, probable cause existed to justify the arrest. To prove money laundering in connection with drug trafficking, the State must

---

[10]Trooper Nelson testified that Appellant was "detained," not arrested, when he handcuffed him and placed him in the patrol car and that another trooper drove him to the DPS office. We note that an officer's opinion is not conclusive, but it is a factor to be considered in determining whether an arrest occurred. *Hoag v. State*, 728 S.W.2d 375, 378–79 (Tex. Crim. App. 1987).

13

prove that Appellant knowingly transported the proceeds of criminal activity.  Tex. Penal Code Ann. § 34.02(a)(1).  Testimony at the suppression hearing and the dashboard-camera video recording admitted at the suppression hearing established that Trooper Nelson was aware of the following facts at that time:

- Appellant was in possession of $10,000 in cash, stored in his pocket and partially bundled;

- an odor of marijuana emanated from the car;

- a small amount of marijuana was discovered on Gonzalez's person;

- neither Gonzalez nor Appellant owned the vehicle, and Appellant and Gonzalez told conflicting stories as to who owned it; and

- drug traffickers frequently travel in a car that does not belong to them.

We note that there is a dearth of case law addressing probable cause in the context of an arrest for money laundering in connection with drug trafficking. However, looking at the elements of the offense and viewing the above facts in their totality and in the light most favorable to the trial court's ruling, we hold that probable cause existed to justify Appellant's arrest.  *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (discussing factors to be considered in prosecution for money laundering, including the presence of drugs, amount of money, packaging of money, and inconsistent stories); *Lee v. State*, 143 S.W.3d 565, 567 (Tex. App.—Dallas 2004, pet. ref'd) (noting defendant's use of a rental car), *cert. denied*, 548 U.S. 924 (2006).  We therefore overrule Appellant's first point.

14

## II. Sufficiency of the evidence

Appellant complains in his second point that the evidence is insufficient to support the conviction.

### A. Standard of review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*,

136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

### B. Applicable law

As stated above, an individual commits money laundering if he knowingly transports the proceeds of criminal activity. Tex. Penal Code Ann. § 34.02(a)(1). The court of criminal appeals has acknowledged that "[f]requently, there is no direct evidence that the cash seized constitutes such proceeds, but a criminal conviction may be based on circumstantial evidence." *Acosta*, 429 S.W.3d at 625. In such cases, we look to the combined and cumulative force of all the incriminating circumstances. *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1046 (1994)).

While the court of criminal appeals has placed emphasis on the concealed nature of money recovered in drug trafficking cases, *id.*, other factors have also been taken into account by the courts in determining whether the evidence has shown a nexus between money and drug dealing. Those factors include the following:

- a denial of knowledge of the money;
- a drug dog alert on the money;
- the amount of the money;
- the packaging of the money;
- the secret storage of the money;

16

- the presence of illegal drugs;

- the presence of records of drug transactions;

- the presence of drug paraphernalia;

- the use of a rental car or car that does not belong to the driver or passenger(s);

- inconsistent stories told by the defendant and codefendant or copassenger;

- nervousness of the defendant in his interactions with the police; and

- evidence of extraneous drug offenses committed by the defendant.

*See id.* at 625 (identifying the first seven factors and collecting cases taking those factors into account); *Deschenes v. State*, 253 S.W.3d 374, 383–84 (Tex. App.—Amarillo 2008, pet. ref'd) (noting presence of scales in defendant's car); *Lee*, 143 S.W.3d at 567 (noting defendant was driving a rental car); *see also Ordaz v. State*, No. 03-07-00039-CR, 2007 WL 2980147, at *8–9 (Tex. App.— Austin Oct. 10, 2007, pet. ref'd) (mem. op., not designated for publication) (noting defendant's nervousness and inconsistent stories); *Granado v. State*, No. 07-05-00444-CR, 2006 WL 2466972, at *1 (Tex. App.—Amarillo Aug. 25, 2006, no pet.) (mem. op., not designated for publication) (noting evidence of defendant's prior convictions for possession of drug paraphernalia).

*Acosta* also noted that travel on a known drug route and courier profile evidence has also been taken into account albeit "[s]omewhat more controversially." *Acosta*, 429 S.W.3d at 625–26.[11]

## C. Application

The following factors are present in this case:

- a text message discovered on Appellant's phone stating, "One whole day to sell a pound, I'm on my game;"

- a drug dog alert on the money, indicating narcotics were near the money at some point;

- two marijuana blunts located in the rear of the car;

- marijuana found on Gonzalez;

- the smell of marijuana emanating from the car;

- an alleged drug-transaction log discovered in the car;

- contradictions between Gonzalez's story and Appellant's story;

- travel on a known drug route in a vehicle that did not belong to Appellant or Gonzalez; and

- photographs of Appellant with large amounts of bundled cash and photographs of marijuana recovered from Appellant's phone.

Appellant argues that this case is similar to *Deschenes*, in which our sister court reversed a conviction for money laundering because the evidence was

---

[11]Other miscellaneous factors have also been taken into account, such as the recovery of five cell phones from a tractor trailer with only two occupants or the strong smell of air freshener. *Id.* at 631; *Powell v. State*, No. 04-11-00495-CR, 2012 WL 3597199, at *4 (Tex. App.—San Antonio Aug. 22, 2012, no pet.) (mem. op., not designated for publication).

insufficient, although the court described the following evidence that was presented:

> (1) Appellant opened the passenger door to speak to the officer, handed him his wallet when asked for his license, and exited on the passenger side at the officer's request; (2) car had energy drinks and fast food wrappers on the floorboard giving it a "lived-in" look; (3) he could not give his uncle's exact address in San Diego; (4) he was traveling east to west on Interstate 40; (5) he was nervous throughout the encounter; (6) he stared at his vehicle rather than maintaining eye contact when answering one of [the officer]'s questions; (7) he denied carrying a large sum of cash; (8) he was in possession of scales; (9) he avoided showing [the officer] the money; (10) the money was in a plastic bag; (11) it was a large amount of money; (12) the money was divided into bundles and wrapped with rubber bands; (13) he had an empty suitcase; (14) he denied having any drugs in his vehicle; (15) he stated he was going to Las Vegas; (16) he failed to produce "documentation" for the money; (17) a narcotics dog alerted to the money and the large empty suitcase; (18) an odor of narcotics on the empty suitcase; (19) the close proximity of the cash to the empty suitcase that presumably contained narcotics at one time; (20) an odor of narcotics on the cash; (21) the money was enough to purchase a felony amount of narcotics; [and] (22) money from drug trafficking travels east to west.

253 S.W.3d at 383–85 (footnotes omitted).

Appellant argues that by comparison, there is no evidence that Appellant seemed the least bit nervous in talking to Trooper Nelson. To the contrary, he was courteous and cooperative. Appellant points out that he handed over the $10,000 as soon as he was asked to do so and that the cash was not divided into bundles and stored in a plastic bag, as in *Deschenes*,[12] or vacuum-packed, as in

---

[12]*Id.* at 384.

19

*Acosta*,[13] nor was it concealed throughout the car.[14] Instead, it was folded,

rubber-banded, and held in Appellant's pockets.

The court in *Deschenes* described the above-listed evidence in that case

as "mere conjecture" in establishing a connection between the money and some

unnamed criminal activity, explaining,

> The State did not present any credible evidence from which it could be inferred Appellant was involved in any drug transaction, sale, or delivery at or around the time he was arrested for money laundering. The State produced no evidence of drugs being found. Nor did the State present any evidence of previous involvement in drugs or drug-related activities by Appellant. Appellant has no prior convictions or police contact related to drugs, has no known relationship with drug trafficking, and made no admissions related to the source of the money other than to say he earned it. Furthermore, the money was not packaged in any way to indicate a conscious desire to prevent its detection by drug dogs. Here we have no admissions, no drugs, no prior connection to drugs, and no obvious attempt to surreptitiously secrete the money or prevent its discovery. Simply put, we have no credible evidence of a temporal connection, or nexus, between the money and some criminal activity.

253 S.W.3d at 385–86.

While we consider *Deschenes* instructive, we are not bound by its

precedent. Moreover, the facts of the case before us contain evidence lacking in

---

[13]429 S.W.3d at 630 (noting that "packaging, especially that designed to fool the nose of a drug dog, is potent evidence" of a nexus between money and drug activity); *see also Powell*, 2012 WL 3597199, at *4 (noting that money was found wrapped in Saran Wrap and duct-taped into brick form).

[14]*Acosta*, 429 S.W.3d at 631 (considering concealment of money in speaker boxes of trailer); *Ordaz*, 2007 WL 2980147, at *8–9 (considering concealment of money in hidden compartments of vehicle, including area where an air filter belonged).

20

*Deschenes*—evidence of a temporal connection between the money and some criminal activity.

Although the State relies solely upon the photographs recovered from Appellant's phone for this nexus, we also note that the text message discovered on Appellant's phone provides a link between the cash and a drug transaction. Just three days prior to Appellant's arrest, the message, "One whole day to sell a pound, I'm on my game," was sent from Appellant's phone. While Appellant claimed that the text was sent by "the guy that [he] bought the phone off of," the jury could have reasonably believed that Appellant sent this text message and that he was bragging to a friend about selling narcotics. *See Carter v. State*, 463 S.W.3d 218, 222 (Tex. App.—Amarillo 2015, no pet.) (distinguishing *Deschenes* on the basis that there was a "substantial body of documentary and testimonial cell phone evidence [that] showed appellants were engaged in marijuana trafficking").

While money found in close quarters with controlled substances[15] or positive drug dog alerts[16] do not alone provide evidence of the nexus between

---

[15]*Compare $7,058.84 in U.S. Currency v. State*, 30 S.W.3d 580, 587–88 (Tex. App.—Texarkana 2000, no pet.) (collecting cases and holding that evidence of marijuana odor and a "big cloud of smoke" emanating from car, rolling papers discovered in car, and discovery of marijuana in defendant's pocket evidenced "at most" that the defendant was a drug purchaser and user, rather than a drug trafficker), *$2,067 in U.S. Currency v. State*, 745 S.W.2d 109, 111 (Tex. App.—Fort Worth 1988, no pet.) (holding evidence was insufficient to support forfeiture where three baggies of controlled substance were discovered as it was just as likely that the drugs had been recently purchased rather than prepared for sale), *with Ordaz*, 2007 WL 2980147 at *8–9 (holding evidence was

21

money and the sale or distribution of a controlled substance, here the jury heard more.  When we view the facts that marijuana was discovered on Gonzalez and in the trunk of the vehicle and that the drug dog positively alerted to the money recovered from Appellant, in combination with the text message, the photographs of Appellant holding bundled cash, the fact that Appellant and Gonzalez were driving a car that did not belong to them, and the recovery of the cryptic notes from the back seat, the evidence was sufficient to allow the jury to determine that the money had been obtained through illegal means.

We therefore overrule Appellant's second point.

## III.  Admission of photographs

In Appellant's third point, he complains of the admission of the photographs recovered from his cell phone and argues that the photographs were not relevant.

We review a trial court's rulings on evidentiary objections for an abuse of discretion.  *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).  A trial

---

sufficient where marijuana debris was located in the trunk of the car, appellant displayed signs of nervousness, appellant's account differed from that of his passenger and was consistent with that of someone engaged in illegal activities, and $116,133 in cash sprayed with air freshener and packaged in Ziploc bags was concealed throughout the car).

[16]*See Acosta*, 429 S.W.3d at 627 (noting that drug dog alerts are "widely accepted in Texas as circumstantial evidence of a nexus between the money and drugs").  *But see Deschenes*, 253 S.W.3d at 384 n.19 (noting that the evidentiary value of such an alert has been questioned "because the spread of trace amounts of drugs in the nation's currency supply increases the likelihood of false alerts" and collecting cases discussing the same).

court does not abuse its discretion unless its ruling is arbitrary and unreasonable; the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Foster v. State*, 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op.).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1991) (op. on reh'g) (citing Tex. R. Evid. 401). Evidence need not prove or disprove a particular fact to be relevant; "it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

Most of the photographs were identified as having been taken within six months prior to Appellant's arrest, and they depicted large amounts of cash, sometimes arranged in stacks or rubber-banded bundles and other times splayed across Appellant's lap. In at least two of the photographs, Gonzalez is shown holding bundles of cash in Ziploc bags, and in others Appellant displayed his middle finger over stacks of cash. Three undated photographs reveal a single bud of "high-grade" marijuana.

At least 16 of the 34 photographs were relevant to rebutting Appellant's argument that the stacks of cash in the photographs were the life insurance proceeds Appellant received from his sister and brother-in-law. According to the testimony of his sister and bank records admitted into evidence, this loan took place in March of 2014. Yet at least 16 of the photographs admitted showed Appellant displaying large stacks of cash prior to that time—in January and February of 2014.

These photographs were also relevant because the offense of money laundering can be shown through a scheme or continuing course of conduct. Tex. Penal Code. Ann. § 34.02(f). Here, the State argued that Appellant had procured the $10,000 through drug trafficking, and the photographs of Appellant posing with large sums of money often packaged in bundles or in Ziploc bags—characteristic of money packaging used by drug traffickers—and photographs of a "high-grade" bud of marijuana were relevant to prove the State's theory of the case. *See, e.g.*, *Jones v. State*, 466 S.W.3d 252, 265–66 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (discussing admission of text messages evidencing "course of conduct regarding depositing of large sums of money in various bank accounts consistent with a drug dealing operation"), *cert. denied*, 136 S. Ct. 2519 (2016); *Woolverton v. State*, 324 S.W.3d 794, 801–02 (Tex. App.—Texarkana 2010, pet. ref'd) (discussing admission of drug ledger as evidence of participation in the drug trade); *see also United States v. Smith*, 424 F. App'x 292, 298–99 (5th Cir.) (holding photographs related to prior conviction for methamphetamine

possession were relevant in drug trafficking prosecution because they provided evidence of appellant's knowledge of the nature of drug packages found in his home), *cert. denied*, 565 U.S. 949 (2011).

Because the photographs provide at least a "small nudge" toward proving that Appellant participated in drug trafficking activities, we hold that those photographs were relevant and the trial court did not abuse its discretion in admitting them into evidence. *See Montgomery*, 810 S.W.2d at 386.

We therefore overrule Appellant's third point.

## Conclusion

Having overruled each of Appellant's three points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 26, 2017